DEPARTMENT OF SOCIAL SERVICES v FRANZEL

Docket No. 138551. Submitted July 7, 1993, at Detroit. Decided April 4, 1994, at 9:10 A.M. Leave to appeal sought.

Roger J. Franzel executed an acknowledgment of paternity regarding Martin J. Lancaster, the son of Victoria L. Lancaster. The Department of Social Services, acting on behalf of Victoria, filed a complaint in the Sanilac Circuit Court, seeking child support from Franzel. An order of filiation and support was entered. Victoria thereafter gave birth to Christopher W. Lancaster. At the instigation of the DSS, acting on behalf of Victoria, Franzel executed an acknowledgment of paternity regarding Christopher and signed a stipulation to amend the order of filiation and support regarding Martin, obligating Franzel to provide support for both Martin and Christopher. An order to that effect was entered by the court. Two years later, Franzel filed a motion to set aside the amended order, alleging that he was not the biological father of Christopher. The court ordered that blood tests be performed, which conclusively excluded Franzel as Christopher's biological father. The court, James A. Marcus, J., on the basis of res judicata, denied Franzel's second motion to set aside the amended order. At no time during any of the proceedings were Franzel or Victoria married, either to each other or to anyone else. Franzel appealed from the order denying his second motion to set aside the amended order.

The Court of Appeals *held*:

1. The circuit court had both personal and subject-matter jurisdiction in this matter.

2. Franzel is entitled to equitable relief pursuant to MCR 2.612(C)(1)(e).

3. The principles of res judicata do not prevent the impeachment of Franzel's affidavit of parentage. The proceedings in this matter are ongoing and the matter has not been finally decided.

4. The order of filiation is no longer equitable. Franzel is

REFERENCES

Am Jur 2d, Affidavits § 27; Judgments §§ 792, 793, 795-797, 799, 802, 803.

See ALR Index under Affidavits; Children; Equity; Judgments, Orders, and Decrees; Res Judicata.

entitled to relief from the operation of the order of support and filiation with regard to Christopher.

5. There is no public policy that in general imposes the obligations of parenthood as a result of promiscuity, absent a genetic connection.

6. The presumption that a child born to a married couple is their obligation does not extend to the offspring of random cohabitants just because their progeny receive public assistance.

Reversed.

1. EQUITY — JUDGMENTS — ORDERS — RELIEF FROM JUDGMENTS.

A trial court, on motion and on just terms, may relieve a party from a final judgment, order, or proceeding where it is no longer equitable that the judgment should have prospective application (MCR 2.612[C][1][e]).

2. PARENT AND CHILD — AFFIDAVITS OF PARENTAGE — RES JUDICATA — EQUITY.

An unmarried man who has executed an affidavit of parentage and stipulated an order of filiation and support with regard to a minor child may be allowed to impeach that affidavit where it is no longer equitable that the affidavit should have prospective application because blood testing has conclusively excluded the man as the biological father of the child, the proceedings in the matter are ongoing, and the matter has not been finally decided; res judicata does not prevent impeachment of the affidavit (MCR 2.612[C][1][e]).

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *James V. Young,* Prosecuting Attorney, and *Thomas P. Sarrine,* Assistant Prosecuting Attorney, for the Department of Social Services.

*Rigney & Hearsch* (by *David W. Hearsch*), for Roger J. Franzel.

Before: DOCTOROFF, C.J., and MICHAEL J. KELLY and GRIBBS, JJ.

MICHAEL J. KELLY, J. May an unmarried man who has executed an affidavit of parentage and stipulated an order of filiation and support subse-

quently impeach that affidavit upon a showing that immunogenetic blood testing conclusively excludes him as the father of the minor child?

In February 1984, defendant executed an acknowledgment of paternity regarding Martin Joseph Lancaster, born August 7, 1983, the son of Victoria Lynn Lancaster. In 1985, after a complaint for nonsupport was filed against defendant by the Department of Social Services, acting on behalf of Victoria Lancaster, an order of filiation and support was duly entered. The defendant's paternity and obligation of support of Martin Joseph Lancaster are not at issue in this case. At no time during these proceedings have defendant or Victoria Lancaster been married, either to each other or to anyone else.

On January 16, 1988, Victoria Lancaster gave birth to another son, Christopher William Lancaster. On April 21, 1988, at the instigation of the DSS, acting again on behalf of Victoria Lancaster, defendant executed an acknowledgment of paternity regarding Christopher. On the same date, defendant also signed a stipulation to amend the order of filiation and support entered in 1985, obligating defendant to provide support for both Martin and Christopher. An order was entered on April 29, 1988, reflecting the terms of the stipulation. During 1989 and 1990, defendant was the subject of four petitions and orders to show cause for contempt because of his failure to meet his support obligations.

On April 9, 1990—two years after signing the acknowledgment of paternity regarding Christopher—defendant filed a motion to set aside the amended order of filiation and support, alleging that he "did not understand the nature and consequence of his execution of the Affidavit of Parentage" and that he had felt "compelled to sign" the

affidavit or go to jail. Defendant further alleged that he did not believe he was the biological father of Christopher and requested that the court order blood tests.

At a hearing regarding the motion held on May 14, 1990, defendant testified that although he did sign the affidavit of parentage regarding Christopher, he did not understand the nature or consequences of the document. He stated, however, that he was not threatened or coerced into signing the affidavit. Defendant testified that during the two years since signing the affidavit, he began to feel that Christopher was not his biological son, that Christopher did not look like Martin, and that he had since learned that Victoria was "seeing other men" at the time of conception. The trial court reluctantly ordered blood tests to be performed, stating "I'm cognizant of the fact that the Friend of the Court's Office shows a $5,525.37 delinquency for this child and I think I know the motivation for the filing of the petition." The tests were done and excluded defendant.

On September 11, 1990, defendant filed a second motion to set aside the amended order of filiation and support, citing the results of the blood tests that indicated that defendant was not the biological father of Christopher. Following a hearing regarding the motion held on September 24, 1990, the trial court entered an opinion on December 27, 1990, denying defendant's motion on the basis of res judicata. An order reflecting the court's decision was entered on February 21, 1991. Defendant appeals as of right.

Defendant raises three issues, the first two attacking the trial court's jurisdiction, and the third attacking the merits of the trial court's order denying defendant relief. We find that the circuit

court had both personal and subject-matter jurisdiction, but reverse the trial court's decision on the merits and grant the relief requested.

Defendant urges error in the trial court's decision on the basis of MCR 2.612(C) and the specific subrules set forth below:

> (C) Grounds for Relief From Judgment.
>
> (1) On motion and on just terms, the court may relieve a party or the legal representative of a party from a final judgment, order, or proceeding on the following grounds:
>
>             * * *
>
> (e) [I]t is no longer equitable that the judgment should have prospective application.
>
> (f) Any other reason justifying relief from the operation of the judgment.

We find error on the basis of subrule C(1)(e). We believe that the defendant is entitled to equitable relief. Plaintiff argues that the doctrine of res judicata precludes defendant from attacking the acknowledgment of paternity and the amended order of filiation and support. Plaintiff relies on *Hackley v Hackley,* 426 Mich 582; 395 NW2d 906 (1986), a divorce case in which our Supreme Court held that a factual determination in a divorce decree that a child was born of the marriage conclusively establishes the child's paternity. We distinguish that decision. First of all, *Hackley* concerned a petition for determination of paternity instituted nine years after the judgment of divorce, and so was an ancillary proceeding. Here, the attack is made directly on the matter adjudged in the same judicial proceeding. Secondly, the public policy that prompted the Court to bar the illegitimization of the *Hackley* child and its disqui-

sition of the parameters of Lord Mansfield's Rule[1] have no application to any public policy issue presented in this case, which is one of recoupment of public assistance rather than vindication of childrens' legitimacy rights or family sanctity.

We disagree with the trial court that principles of res judicata prevent the impeachment of defendant's affidavit of parentage. While it is certainly true that parentage is the issue, it is the selfsame litigation in which defendant's motions were brought, not a prior proceeding. These parties are involved in "res litigious," things that are in litigation; not res judicata, a prior final judgment that is conclusive of the parties' rights. In other words, this matter has not been finally decided and the proceedings are ongoing. We surmise, but do not decide, that it would require a different analysis if the DSS had proceeded by complaint under the Paternity Act, MCL 722.711 *et seq.*; MSA 25.491 *et seq.*

In *Hackley,* the divorce judgment stated that two children had been born of the marriage. *Id.* at 600. The attack on paternity was mounted nine years later. The Supreme Court held that the paternity determination must be given res judicata effect because the father had an opportunity to challenge the paternity determination at the time of the divorce and chose not to. *Id.* at 589-590. The similarity between *Hackley* and the case at bar begins and ends with the question of *opportunity* to litigate the issue. In *Hackley,* the Supreme Court never considered the issue of relief from

---

[1] [*Goodright v Moss,* 2 Cowp 591; 98 Eng Rep 1257 (1777).]

Lord Mansfield's Rule precluded testimony concerning nonaccess by either a husband or wife which would tend to bastardize a child born of the marriage. The presumption that a child born during wedlock is a legitimate issue could be rebutted, however, by testimony from third persons indicating nonaccess. [426 Mich 585-586.]

judgment under MCR 2.612 or its predecessor GCR 1963, 528. *Hackley* was a four-to-three decision, and the Court was sharply divided regarding whether relitigation of the paternity determination was barred by res judicata. The Court was not presented with, and we do not speculate regarding its treatment of *Hackley* on, equitable grounds under MCR 2.612(C)(1)(e). We hold only that the underlying facts in this case are distinguishable, that the order of filiation is "no longer equitable," and that defendant's petition justifies relief from the operation of the order of support and filiation.

The public policy underlying *Hackley* is clear. There is no public policy that imposes on promiscuity in general the obligations of parenthood, absent the necessity of genetic connection. To hold otherwise would obscure the distinction between marriage and sexual responsibility, and effect a sort of fatherhood obligation by Russian roulette; pick one of a collective, choose one of a group, which we decline to sanction.

Plaintiff urges that the reversal of the trial court's decision would severely prejudice the child. That is not our doing; that is the result of the child's biological parents' conduct. The child was illegitimate at his birth. The order of filiation did not change that and neither the trial court's order nor the power of any appellate court can revise history. As far as we can detect, only the DSS is interested in the laissez-faire sexual mores of Michigan's citizenry, and that interest is monetary, not moral. If there is a presumption that a child born to a married couple is their obligation (cf. *Shepherd v Shepherd,* 81 Mich App 465; 265 NW2d 374 [1978], tracking Lord Mansfield's Rule), such presumption does not extend to the offspring of random cohabitants just because their progeny turn up on the public dole.

Reversed.