GUISE v ROBINSON

Docket No. 183562. Submitted September 3, 1996, at Lansing. Decided
September 27, 1996, at 9:10 A.M. Leave to appeal sought.

Shirley Guise and the Department of Social Services brought a pater-
nity action against Lester Robinson in the Genesee Circuit Court,
alleging that Demetrius Guise, Shirley Guise's son, was fathered by
the defendant. The defendant offered evidence of two blood tests
that had excluded him as the child's biological father, but the court,
Geoffrey L. Neithercut, J., ruled that the defendant was equitably
estopped from denying paternity. The Court of Appeals, SHEPHERD,
P.J., and HOLBROOK, JR., and MACKENZIE, JJ., affirmed in an unpub-
lished opinion per curiam, issued September 23, 1993 (Docket No.
145581). The Supreme Court, in lieu of granting leave to appeal,
vacated the judgment of the Court of Appeals, found the defendant
not to be the child's biological father, and remanded the case to the
trial court for reconsideration of the issue whether the defendant
should be estopped from denying paternity. 445 Mich 906 (1994).
On remand, the trial court again ruled that the defendant was
estopped from denying paternity. The defendant appealed.

The Court of Appeals *held*:

Equitable estoppel arises where a party, by representations,
admissions, or silence intentionally or negligently induces another
party to believe facts, the other party justifiably relies and acts on
that belief, and the other party will be prejudiced if the first party
is allowed to deny the existence of those facts. In this case, where
the defendant signed two forms acknowledging paternity some
eight or nine years before the paternity action, treated the child as
his son, testified that he had not indicated doubts about the child's
paternity to anyone, did not object to his mother and his sister
treating the child as his son, did not challenge paternity until nine
years after first acknowledging paternity, induced the child and this
plaintiff mother to believe the defendant's acknowledgment of
paternity, induced the establishment of a father-son relationship
and familial relationship, induced the plaintiff mother and the DSS
not to pursue an investigation into paternity, and the child and the
plaintiff mother would be seriously prejudiced if the defendant is
allowed to deny paternity, the trial court correctly concluded that
the defendant is equitably estopped from denying paternity.

Affirmed.

1. EQUITY — ESTOPPEL.

Equitable estoppel arises where a party, by representations, admissions, or silence intentionally or negligently induces another party to believe facts, the other party justifiably relies and acts on that belief, and the other party will be prejudiced if the first party is allowed to deny the existence of those facts.

2. PARENT AND CHILD — PATERNITY — EQUITABLE PARENT.

A man who represents himself for many years as the father of a child is equitably estopped by virtue of such conduct from denying paternity; the length of time during which the man holds himself out as the father of the child, rather than the existence of a marriage between the man and the child's mother, is the determining factor in deciding whether equitable estoppel is to apply in a given case.

*Arthur A. Busch*, Prosecuting Attorney, *Donald A. Kuebler*, Chief, Appeals, Research, and Training, and *Marcie Mann*, Assistant Prosecuting Attorney, for the plaintiffs.

*Church, Kritselis, Wyble & Robinson, P.C.* (by *Richard R. Rashid*), for the defendant.

Before: MARKMAN, P.J., and MCDONALD and M. J. MATUZAK,* JJ.

MARKMAN, P.J. Defendant Lester Robinson appeals as of right an order estopping him from denying paternity of Demetrius Guise, born on September 15, 1981, despite blood tests establishing that he was not the biological father. In a prior appeal, this Court affirmed the order. *Guise v Robinson*, unpublished opinion per curiam of the Court of Appeals, issued September 23, 1993 (Docket No. 145581). The Michigan Supreme Court vacated this Court's judgment, specifically found that defendant was not the biologi-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

cal father, and remanded the matter to the trial court. *Guise v Robinson*, 445 Mich 905 (1994). It stated at 906:

> On remand, the trial court is to reconsider the issue whether the defendant should be estopped from denying paternity because of undue delay in disputing the matter. In particular, the court shall weigh the reasonableness of the defendant's actions—e.g., whether he signed the acknowledgment of paternity under pressure, whether he acted without the advice of counsel, whether he was led to believe he would not be required to pay child support— against any disadvantages the delay may have imposed upon the plaintiff and the minor child; e.g., whether the passage of time has foreclosed the option of further investigating the identity of the biological father. The court is to make sufficiently detailed findings as will disclose the factual basis of its decision on the estoppel issue. If the court determines that the defendant is not estopped from disputing paternity, then the court shall set aside the acknowledgment of paternity and the order for support, so that the identity of the biological father thereafter may be investigated and determined according to the established procedure. See MCL 722.711 *et seq.*; MSA 25.491 *et seq.*

On remand, the trial court ruled that defendant was estopped from denying paternity of Demetrius. We affirm.

At the hearing on remand, plaintiff Shirley Guise testified. She stated that she applied for welfare benefits shortly before Demetrius was born (in September 1981). As a condition of receiving benefits, she was required to tell the Department of Social Services (DSS) who the father was. She testified that she identified defendant as the father because she thought that he was the father and because she could not remember being sexually involved with anyone else during the relevant period.

Defendant also testified. He was in the military from 1980 through 1985. He admitted that he had had sexual relations with Guise nine months before Demetrius was born. He received and signed an acknowledgment of paternity in 1981, at which time he was stationed in Oklahoma. He testified that he signed the acknowledgment because Guise had informed him that he was Demetrius' father. He admitted that he did not express any doubts to anyone that he was Demetrius' father. While he was stationed in Germany, in 1982, he received a second acknowledgment of paternity form because he had not had the first one notarized. He also received a letter from Guise informing him that her welfare benefits would be discontinued if he did not sign the form. He signed it. Regarding whether he was pressured to sign the second acknowledgment of paternity, defendant testified:

> The only thing to cause—the only—nobody physically said, "Hey, you better sign this." When I signed that, it was because what I received from [Guise] telling me she was gonna get cut off welfare. That's what struck me. . . . In my mind, if that's my son, I want to make sure that, you know, she did have support.

Defendant testified that he thought of Demetrius as his son, treated him as his son for the next nine years, and cared about him. He also testified that his mother and sister treated Demetrius as his son.

Plaintiffs filed the present complaint for child support in May 1990. In October 1990, defendant signed an order of filiation for temporary support of $90 a week. That same month, he moved for a paternity blood test. Two blood tests were performed, and they excluded defendant as the biological father of Deme-

trius. Defendant stopped seeing Demetrius for approximately one month during this period. Demetrius testified that he was confused and upset that defendant stopped talking to him. Demetrius underwent counseling in connection with the paternity trial.

In November 1990, Guise had a son whose biological father is defendant. During the hearing on remand, Guise testified that defendant visited both children. Demetrius testified that his relationship with defendant was good at the time of the hearing.

At the conclusion of the hearing on remand, the trial court found that no pressure had been exerted over defendant that would justify setting aside his acknowledgments of paternity. It noted that defendant had access to legal counsel through the military but had chosen to forgo such assistance. It found that Guise was trying to be honest regarding the circumstances surrounding Demetrius' conception and that "there would be no way, ten years later, in 1991, for the investigation of who else might have had intercourse with [Guise] to cause the conception." It concluded that estoppel was established because there was an "unjustified delay" by defendant in challenging paternity, which he had originally acknowledged.

Defendant claims that the trial court erred in finding that he was estopped from denying paternity of Demetrius.

Equitable estoppel rests in broad principles of justice. Since equity is involved, our standard of review is de novo, with no reversal unless the trial court's findings were clearly erroneous or we conclude that we would have reached a different result had we occupied the lower court's position. [*Schmude Oil Co v Omar Operating Co*,

184 Mich App 574, 582; 458 NW2d 659 (1990) (citations omitted).]

In *Soltis v First of America Bank-Muskegon*, 203 Mich App 435, 444; 513 NW2d 148 (1994), this Court set forth the elements of equitable estoppel:

Equitable estoppel arises where a party, by representations, admissions, or silence intentionally or negligently induces another party to believe facts, the other party justifiably relies and acts on that belief, and the other party will be prejudiced if the first party is allowed to deny the existence of those facts.

This Court has repeatedly found putative fathers estopped from denying paternity in the context of divorce actions. In *Johnson v Johnson*, 93 Mich App 415, 420; 286 NW2d 886 (1979), this Court found a putative father "estopped by his conduct to deny paternity of [the] child." The *Johnson* Court stated at 419-420:

Plaintiff assumed the status of father of this child when the child was born and continued as such for ten years until he amended his divorce complaint at trial. As the child was born during the marriage while the parties lived together as husband and wife, it was not necessary for plaintiff to go through adoption proceedings. Conversely, after plaintiff has represented himself as the father of this child for nine to ten years, he may not now say that he was not.

In *Nygard v Nygard*, 156 Mich App 94, 97; 401 NW2d 323 (1986), the defendant knew that he was not the child's biological father before she was born, but agreed to raise the child as his own. The defendant first asserted that he was not the child's biological father approximately one year and nine months after her birth. The *Nygard* Court stated that it agreed with

the conclusion in *Johnson, supra,* that "under certain circumstances a person other than a biological parent may be held responsible for child support." 156 Mich App 99. It also found that all the elements of equitable or promissory estoppel were present and concluded that defendant's promise must be enforced to avoid injustice. *Id.* at 100.

In *Atkinson v Atkinson,* 160 Mich App 601; 408 NW2d 516 (1987), the plaintiff sought custody and visitation of a child born during the marriage. Blood tests indicated that he was not the biological father of the child. The *Atkinson* Court held at 608-609:

> Therefore, we adopt the doctrine of equitable parent and find that a husband who is not the biological father of a child born or conceived during the marriage may be considered the natural father of that child where (1) the husband and the child mutually acknowledge a relationship as father and child, or the mother of the child has cooperated in the development of such a relationship over a period of time prior to the filing of the complaint for divorce, (2) the husband desires to have the rights afforded to a parent, and (3) the husband is willing to take on the responsibility of paying child support. We hold that the husband may be considered the equitable parent under these circumstances and remand this case in order to allow the circuit court to reevaluate custody and visitation, treating plaintiff as a natural parent of Baird.

In adopting the doctrine of the equitable parent, the *Atkinson* Court noted *Johnson* and *Nygard* and stated, "we recognize that a person who is not the biological father of a child may be considered a parent against his will, and consequently burdened with the responsibility of the support for the child." *Id.* at 610. It also noted that "the best interest of the child is

the major concern of any custody determination." *Id.* at 611.

In *Johns v Johns*, 178 Mich App 101; 443 NW2d 446 (1989), allegations of nonpaternity first arose in the context of determining custody of the children at issue. The *Johns* Court held, "[w]here, as in this case, a father rears a child as his own, he is estopped to deny that the child is his." *Id.* at 106. It also cited *Atkinson* and stated, "plaintiff's prior behavior in acknowledging paternity and rearing the child as his own estops him from denying his status as an equitable father and escaping his child support obligations." *Id.* at 107.

In *Soumis v Soumis*, 218 Mich App 27; 553 NW2d 619 (1996), this Court affirmed the denial of an adjournment to obtain blood tests. The plaintiff believed that a child born during the marriage was his biological daughter although the defendant told him that he was not the father at the time she informed him of the pregnancy. The *Soumis* Court cited *Atkinson* and *Johnson* and held:

> In this case, there was sufficient evidence that plaintiff was the child's biological father. Even if a husband knows that he may not be the father of a child born during the marriage, this Court has held that where he represents himself for many years as the father of the child, he is estopped by his conduct from denying paternity. [218 Mich App 33.]

These cases indicate circumstances under which a putative father may be estopped from denying paternity of a child. The present matter may be distinguished from the cited cases on the basis that here the parties were never married to each other. However, this is a distinction without a difference with

respect to the elements of equitable estoppel. The cited cases emphasized the length of time during which the putative father held himself out as a father rather than the existence of a marriage relationship in finding estoppel. Here, defendant signed two acknowledgments of paternity and treated Demetrius as his son. He testified that he did not indicate to anyone that he doubted that he was Demetrius' father. Nor did he object to his mother and sister treating Demetrius as his son. Defendant first challenged whether he was Demetrius' biological father in October 1990, nearly nine years after he first acknowledged paternity of Demetrius. Defendant's actions acknowledging paternity induced Guise and Demetrius to believe that he was acknowledging paternity of Demetrius. His actions induced Demetrius to establish a father-son relationship with defendant and a familial relationship with defendant's mother and sister. Defendant's actions also induced Guise—and the DSS—not to investigate whether someone else was Demetrius' father at a time when it would have been feasible to do so. Demetrius and Guise justifiably acted in reliance on defendant's actions acknowledging paternity. Both Demetrius and Guise will be seriously prejudiced if defendant is now permitted to deny paternity. Accordingly, the elements of equitable estoppel are met here. See *Soltis, supra.*

We focus especially on Demetrius' best interests in determining whether defendant is equitably estopped from denying paternity at this late date. Through age nine, Demetrius believed defendant to be his father. Once defendant moved back to the area after his military service, he established a father-son relationship with Demetrius. Awareness that defendant has now

questioned whether he is Demetrius' father has negatively affected Demetrius, as indicated by the evidence that he has recently undergone counseling.[1] Demetrius' best interests would clearly be undermined by permitting defendant to deny paternity of Demetrius nearly nine years after first explicitly acknowledging it.

Defendant cites *Dep't of Social Services v Franzel*, 204 Mich App 385; 516 NW2d 495 (1994), which involved a paternity challenge in the context of an unmarried putative father. The defendant signed an acknowledgment of paternity and stipulated an order of filiation and support four months after the child at issue was born. Two years later, the defendant moved to set aside the order of filiation and support. Blood tests excluded the defendant as a possible biological father of the child. The trial court denied the defendant's motion. The *Franzel* Court reversed and found that the defendant was entitled to relief from judgment pursuant to MCR 2.612(C)(1)(e), which provides, "it is no longer equitable that the judgment should have prospective application." *Id.* at 389. It distinguished the case before it from *Hackley v Hackley*, 426 Mich 582; 395 NW2d 906 (1986), which analyzed a paternity challenge on res judicata grounds. However, the *Franzel* Court was faced with a much shorter delay in challenging paternity than in the present case and did not address the issue of estoppel. We accordingly find it inapposite to the present matter.

---

[1] We note that more recently Demetrius and defendant have apparently resumed their father-son relationship, fostered in part by the fact that defendant is the biological father of Demetrius' younger brother.

For these reasons, we find that the trial court appropriately concluded that defendant was equitably estopped from denying paternity of Demetrius.

Affirmed.