YORK v MOROFSKY

Docket No. 188845. Submitted August 7, 1997, at Lansing. Decided September 12, 1997, at 9:00 A.M.

Cynthia York brought an action for divorce from Chester Morofsky in the Ionia Circuit Court, claiming that a child born to her during the marriage was not fathered by the defendant. The court, James K. Nichols, J., entered a judgment of divorce that excluded the minor child as a child of the marriage and subsequently denied the defendant's motion for a hearing regarding his request that he be determined an equitable parent entitled to visitation of the child. The defendant appealed by leave granted.

The Court of Appeals *held*:

1. The trial court did not err in determining that the defendant is not the child's biological father in light of the defendant's repeated admissions that he believed the plaintiff's claim that he is not the child's biological father and his waiver of court-ordered blood testing to establish paternity.

2. In determining child custody and visitation in a divorce proceeding involving a husband who is not the biological father of a child born or conceived during the marriage, the husband may be considered the natural father of the child where: the husband and the child mutually acknowledge a relationship as father and child, or the mother of the child has cooperated in the development of such a relationship before the filing of the complaint for divorce; the husband desires to have the rights afforded to a parent; and the husband is willing to take on the responsibility of paying child support. Once a putative equitable father meets or has met these criteria, he remains an equitable father regardless of any subsequent change in conditions. The evidence in this case indicates that the defendant satisfied the criteria for being considered an equitable father. The trial court therefore erred in determining that the defendant was not the child's equitable father, and the matter must be remanded for reconsideration of the trial court's decision with respect to visitation and child support.

Affirmed in part, reversed in part, and remanded.

DIVORCE — CHILD CUSTODY — EQUITABLE FATHERS.

> A court, when determining child custody and visitation in a divorce proceeding involving a husband who is not the biological father of a child born or conceived during the marriage, may consider the husband as the natural father of the child where: the husband and the child mutually acknowledge a relationship as father and child, or the mother of the child has cooperated in the development of such a relationship before the filing of the complaint for divorce; the husband desires to have the rights afforded to a parent; and the husband is willing to take on the responsibility of paying child support; once such criteria are met or have been met, the husband acquires the permanent status of equitable father.

*David A. Kallman*, for the defendant.

Before: CORRIGAN, C.J., and MARKEY and MARKMAN, JJ.

MARKMAN, J. Defendant appeals by leave from an order denying defendant's paternity of a minor child, Joshua Morofsky, and denying defendant's requests for a hearing de novo and stepparent visitation. We affirm in part, reverse in part, and remand for reconsideration of visitation and child support.

Plaintiff and defendant were married from August 26, 1983, until a judgment of divorce was entered on June 23, 1992. During divorce proceedings, plaintiff disclaimed defendant's parentage of Joshua, who was born during their marriage on April 17, 1987. Before this disclosure, defendant had always acted as, and believed himself to be, Joshua's father. No paternity testing has been performed to test plaintiff's claim. The trial court entered the divorce judgment excluding Joshua as a child of the marriage. The trial court later determined that defendant was not Joshua's biological or equitable parent and denied defendant's requests for a hearing de novo and for stepparent visitation.

When reviewing a child custody matter, this Court must affirm the decision of the trial court unless its factual findings are against the "great weight of the evidence," its discretionary rulings demonstrate a "palpable abuse of discretion," or it has made a "clear legal error" with regard to a major issue. MCL 722.28; MSA 25.312(8); *Fletcher v Fletcher*, 447 Mich 871, 876-877; 526 NW2d 889 (1994).

Defendant first argues that the trial court erred in terminating defendant's parental rights and in denying defendant's rights as an equitable parent. As part of its jurisdiction over the divorce proceeding, the trial court had the power to determine the paternity of Joshua. *Atkinson v Atkinson*, 160 Mich App 601, 606; 408 NW2d 516 (1987). We find that the trial court did not err in determining that defendant is not Joshua's biological parent. The trial court's finding that defendant is not Joshua's biological parent was not against the great weight of the evidence, given defendant's admissions at several hearings that he believed plaintiff's claim that he is not the child's biological father and his waiver of court-ordered blood testing.[1]

The trial court, however, misapplied the test for determining if defendant could be Joshua's equitable parent. As a result, it erred in rejecting defendant's claim as an equitable parent. The test provides:

---

[1] The trial court was not estopped from making this determination because plaintiff made her disclosure before the entry of the judgment of divorce and because defendant failed to demonstrate how he detrimentally relied on plaintiff's complaint, which listed Joshua as a child of the marriage, where he repeatedly failed to pay child support and where any child support for Joshua was retroactively rescinded to the beginning of the divorce proceedings at his request.

> [A] husband who is not the biological father of a child born or conceived during the marriage may be considered the natural father of that child where (1) the husband and the child mutually acknowledge a relationship as father and child, or the mother of the child has cooperated in the development of such a relationship over a period of time prior to the filing of the complaint for divorce, (2) the husband desires to have the rights afforded to a parent, and (3) the husband is willing to take on the responsibility of paying child support. [*Id.* at 608-609.]

Here, the trial court did not take issue with defendant's claim that he satisfied the first two prongs of the test. However, despite defendant's contention that he was willing to provide child support, the trial court held that defendant failed to satisfy the third prong because his actions during the pendency of the divorce litigation did not demonstrate "an actual, sincere effort" to provide support. While we agree that it is appropriate to consider both a party's actions and statements to determine "willingness" to provide child support, here the trial court focused only on defendant's actions *after* the filing of the divorce action. The court entirely ignored defendant's role in supporting the child for the first four years of his life, before plaintiff filed for divorce in July 1991.

More fundamentally, the trial court's interpretation of the third prong erroneously suggests that equitable parenthood is a condition that may ebb and flow over time. For example, in *In re Spencer Estate*, 147 Mich App 626, 632; 383 NW2d 266 (1985), this Court held that a putative father and daughter had mutually acknowledged the relationship of parent and child for purposes of intestate succession under MCL 700.111(4)(c); MSA 27.5111(4)(c). The *Spencer* Court stated at 632, "We do not believe that the statute

should be construed to require an ongoing social relationship" and concluded that both parties had acknowledged a biological relationship that neither disturbed. *Id.* at 635.

Similarly, equitable parenthood is a permanent status once it attaches. Once it is determined that a party is an equitable parent, that party becomes endowed with both the rights and responsibilities of a parent. There is no distinction at that point between the "equitable" parent and any other parent; each is endowed with the same rights and responsibilities of parenthood. To be an equitable parent, it is not necessary that a party continually meet the three *Atkinson* criteria any more than it is necessary for a biological or adoptive parent to perpetually meet such criteria in order to retain parental status. The relevant inquiry is whether a putative equitable parent meets or has met the *Atkinson* requirements at some point in time. While the *Atkinson* criteria are expressed in the present tense, their application requires consideration of whether they have ever been established. Also, the *Atkinson* Court did not require a minimum time in which to establish each of the criteria. With respect to all three criteria, we assume that they must exist over a reasonable period to be established. For example, regarding the first criterion, having a parent-child relationship for a few weeks after a child's birth would probably not suffice to satisfy this criterion, but maintaining such a relationship over some period of years clearly would. We will not attempt to determine a bright-line minimum period. If a party satisfies these criteria for a reasonable period at some point, the party is an equitable parent with both the rights and responsibilities of any other parent. A subsequent

change regarding any of the criteria, e.g., a subsequent unwillingness to pay child support, would not alter such a party's status any more than it would alter the status of an adoptive parent who developed second thoughts about an adoption. "[A]n individual who has been found to be an "equitable parent" under the *Atkinson* standards stands on equal footing with any other natural or adoptive parent." *Soumis v Soumis*, 218 Mich App 27, 34; 553 NW2d 619 (1996).

The view that equitable parenthood is fluid—i.e., a condition that could change over time—rather than a permanent status, is untenable for a number of reasons. First, it would undermine the principle set forth in *Soumis* that equitable parents stand on equal footing with natural and adoptive parents. If equitable parenthood could ebb and flow over time, it would be a class of parenthood inferior to natural or adoptive parenthood, which are usually permanent statuses. Second, stability in acknowledged parent-child relationships is generally in the child's best interests. In the instant case, for example, for Joshua to suddenly be deprived of the only father that he has ever known might well be emotionally traumatizing. "[T]he best interest of the child is the major concern of any custody determination." *Atkinson, supra* at 611. We believe that the child's best interests are also of major concern in determining whether a party is an equitable parent as well. Third, stability and security in familial relationships are also in the parents' best interests. Defendant's—or any other individual's—status as a parent should not be subject to continuing judicial evaluations regarding whether he satisfies the criteria set forth in *Atkinson*. Finally, a view of equitable parenthood as a permanent status would foster

legal certainty and predictability in such collateral areas as inheritance, income tax status, and medical care responsibility. All of these concerns support the conclusion that equitable parenthood should be treated as a permanent status rather than as a condition that may ebb and flow over time depending on whether the three *Atkinson* criteria, once satisfied, continue to be satisfied at every future moment.

Here, the child in question was born during the parties' marriage. Accordingly, there was a presumption that he was defendant's child.[2] The evidence indicates that during the marriage defendant and Joshua had a full father-son relationship and that plaintiff cooperated in the development of this relationship. In plaintiff's divorce complaint, she initially listed both her children as children of the marriage. It appears that it was not until March 1992 that plaintiff informed defendant that he was not Joshua's biological father. Joshua was then nearly five years old. This evidence indicates that defendant meets the first *Atkinson* criterion: both parents and the child acknowledge a five-year-long relationship. It is also clear that defendant desired (and continues to desire) to be Joshua's father, thus meeting the second criterion. Finally, it is clear that defendant stated that he was willing to provide support and, in fact, provided considerable support to Joshua during the first four years of his life

---

[2] Birth of a child during wedlock creates a presumption that the husband is the father of the child. *In re Flynn,* 130 Mich App 740, 760; 344 NW2d 352 (1983). See also *Serafin v Serafin,* 401 Mich 629, 636; 258 NW2d 461 (1977), which discusses the "viable and strong, though rebuttable, presumption of legitimacy." Also, MCL 700.111(2); MSA 27.5111(2) states in pertinent part, "If a child is born or conceived during a marriage, both spouses are presumed to be the natural parents of the child for all purposes of intestate succession."

(before the filing of the divorce complaint), thereby satisfying the third of the *Atkinson* criteria.[3] Accordingly, we conclude that defendant is Joshua's equitable parent and that the trial court erred in determining otherwise.

For these reasons, we affirm the trial court's determination that defendant is not Joshua's biological father and reverse the trial court's determination that defendant is not Joshua's equitable parent and remand this action to the trial court for reconsideration of its visitation and child support decisions in accordance with this opinion. Our resolution of these issues makes it unnecessary for us to address the other issues defendant raised. We do not retain jurisdiction.

---

[3] "Willing" is defined as "disposed or consenting; inclined." *Random House Webster's College Dictionary* (1992). It is not clear from the record that defendant is currently "unwilling" to support the child as the trial court concluded. The court emphasized principally that defendant had not, in fact, made child support payments, but it failed to address the extent to which defendant was capable of making such payments in light of his employment status.