## VAN v ZAHORIK

Docket No. 199146. Submitted October 9, 1997, at Marquette. Decided December 19, 1997, at 9:10 A.M. Leave to appeal sought.

Scott Van brought an action in the Menominee Circuit Court against Mary Zahorik, seeking to establish his paternity with regard to two children born to the defendant, one in 1989 and the other in 1993. The parties were never married, but cohabited from 1986 to 1991 and continued to have a sporadic relationship for several years thereafter. The plaintiff alleged that the defendant told him that he was the father of both children and that he cared for and supported the children during and after his relationship with the defendant. The defendant denied telling the plaintiff that he was the father, and blood tests determined that the plaintiff was not the biological father. The plaintiff argued that he was an equitable parent and that the defendant was estopped from denying him parental rights. The court, Francis D. Brouillette, J., granted summary disposition for the defendant. The plaintiff appealed.

The Court of Appeals *held*:

1. The equitable parent doctrine has not been applied in Michigan in a situation like that presented in this case. No authority requires the Court of Appeals to extend the equitable parent doctrine to a situation where, as here, the person seeking to assert the doctrine was not married to the natural parent of the child at the time the child was born or conceived, and public policy and judicial restraint prevents such extension in this case.

2. The public policy question raised in this case is best left to the legislative process. The Legislature has spoken in great detail in this area by developing a complex statutory scheme dealing with such issues. Expansive judicial action would infringe on occupied, legislative ground.

3. No authority requires the Court of Appeals to apply equitable estoppel against a natural parent to allow a third party parental visitation rights. Judicial restraint requires the Court of Appeals to refuse to extend the application of equitable estoppel to the facts of this case. In addition, equitable estoppel does not provide a cause of action and therefore does not provide a remedy in this case.

Affirmed.

HOOD, J., dissenting in part, stated that equitable estoppel should preclude the defendant, under the facts of this case, from arguing that the plaintiff should not have visitation rights. The facts support a finding that the plaintiff would be estopped from denying liability for child support payments. It would be inequitable to hold that the plaintiff could be liable for such payments but could not enjoy visitation because he is not related to the children by blood. The defendant should be bound by the same rules of equitable estoppel as the plaintiff. The trial court's order granting summary disposition for the defendant should be reversed and the matter should be remanded for a determination whether visitation is in the best interests of the children and, if so, what visitation is appropriate.

1. CONSTITUTIONAL LAW — PUBLIC POLICY.

Making social policy generally is a job for the Legislature, not the courts; this is especially true when the determination or resolution requires placing a premium on one societal interest at the expense of another.

2. ESTOPPEL — EQUITABLE ESTOPPEL — PARENT AND CHILD — VISITATION — THIRD PARTIES.

The doctrine of equitable estoppel has not been expanded to the point where a natural parent must allow a third party to have parental visitation rights with regard to the children of the natural parent.

3. ESTOPPEL — EQUITABLE ESTOPPEL.

Equitable estoppel is not a cause of action and therefore provides no remedy; the doctrine is generally available as protection from a defense raised by a defendant or as an aid to the plaintiff.

*Law Offices of Geoffrey A. Sparks* (by *Geoffrey A. Sparks*), for the plaintiff.

*Barstow, Selsor & Hoffman, P.C.* (by *Jonathan P. Barstow*), for the defendant.

Before: MURPHY, P.J., and HOOD and BANDSTRA, JJ.

MURPHY, P.J. Plaintiff appeals as of right the trial court's grant of summary disposition in favor of defendant. We affirm.

Plaintiff and defendant were not married, but cohabited from 1986 to 1991. Plaintiff claims that although the parties ceased living together in 1991, they continued to have a "sporadic" relationship for several years. During the course of their relationship, two children were born; one in 1989 and the other in 1993. Plaintiff alleges that defendant told him that he was the father of the children. According to plaintiff, he has cared for and supported both children during and after his relationship with defendant. However, plaintiff alleges that since he has begun a relationship with another woman, defendant has refused him the opportunity "to exercise his normal parenting time with the minor children." As a result, plaintiff filed a complaint seeking to establish paternity. Defendant denies that she told plaintiff that he was the father of the children, and blood tests determined that plaintiff was not their biological father.[1] Defendant moved for summary disposition, claiming that because plaintiff was not the biological father and could not establish that he was the equitable parent of the children, he had no parental rights. Plaintiff argued that he qualifies as an equitable parent and that defendant is equitably estopped from denying him parental rights. The trial court ruled that, because plaintiff and defendant were never married, plaintiff had no grounds upon which to claim he was entitled to equitable relief in the form of parental rights.

---

[1] The trial court ruled only with regard to plaintiff's equitable claims and did not foreclose plaintiff from filing an amended complaint alleging that he is the biological father. However, on appeal, plaintiff frames his arguments in terms of his rights as a "nonbiological father." Therefore, we consider the blood test evidence and the lack of a biological relationship between plaintiff and the children to be undisputed for our purposes.

I

First, plaintiff claims that he should be considered an equitable parent even though he was not at any time married to defendant, the children's biological mother. We disagree.

The equitable parent doctrine originated in Michigan with this Court's decision in *Atkinson v Atkinson*, 160 Mich App 601; 408 NW2d 516 (1987). *Atkinson* dealt with a child born during the parties' marriage. The plaintiff husband filed for divorce and sought custody or visitation. The defendant wife opposed the plaintiff husband's desire for custody or visitation on the grounds that he was not the biological father of the child. The trial court awarded custody to the defendant wife and denied the plaintiff husband visitation, ruling that because of the lack of a biological relationship, the plaintiff husband was not the child's parent, but simply a third party. This Court reversed and remanded, holding that, under the circumstances, the plaintiff husband was an equitable parent and should have been treated as if there were a biological relationship between him and the child. This Court stated that

> a husband who is not the biological father of a child born or conceived during the marriage may be considered the natural father of that child where (1) the husband and the child mutually acknowledge a relationship as father and child, or the mother of the child has cooperated in the development of such a relationship over a period of time prior to the filing of the complaint for divorce, (2) the husband desires to have the rights afforded to a parent, and (3) the husband is willing to take on the responsibility of paying child support. [*Id.* at 608-609.]

While this Court's decision has led to the adoption of the equitable parent doctrine in other states, "[v]ery few jurisdictions have embraced the equitable-parent doctrine adopted in *Atkinson* . . . ." *Titchenal v Dexter*, ___ Vt ___; 693 A2d 682, 689 (1997); see, generally, anno: *Parental rights of man who is not biological or adoptive father of child but was husband or cohabitant of mother when child was conceived or born*, 84 ALR4th 655. A typical criticism of the doctrine is not so much that such persons should have no rights, but that the existence and extent of those rights should be crafted legislatively, not judicially. See, e.g., *Petition of Ash*, 507 NW2d 400, 404 (Iowa, 1993).

Despite the criticism of other jurisdictions, there is no doubt that the equitable parent doctrine is still recognized in Michigan. See *York v Morofsky*, 225 Mich App 333; 571 NW2d 524 (1997). However, plaintiff's claim is a novel one in that he asks us to extend application of the doctrine to a situation in which it has not previously been applied. Up to this point, the equitable parent doctrine has been applied in Michigan only in cases in which the parties were married and the child was born in wedlock. See *Bergan v Bergan*, 226 Mich App 183; 572 NW2d 272 (1997); *Morofsky, supra; Soumis v Soumis*, 218 Mich App 27; 553 NW2d 619 (1996); *Atkinson, supra.* Plaintiff argues that there is no reason why the doctrine should not be applied in this case as well.

One panel of this Court did mention the equitable parent doctrine in the context of a child born out of wedlock. In *Hawkins v Murphy*, 222 Mich App 664; 565 NW2d 674 (1997), this Court was asked to review a trial court's paternity and visitation decision in

regard to a child born to the plaintiff before her marriage to the defendant, who was not the child's biological father. This Court held that reversal of the decision was required because of res judicata and collateral estoppel, but then went on to say that "[e]ven if res judicata and collateral estoppel did not apply in this case, there is ample evidence in the record to support a finding that defendant is Patrick's 'equitable parent.' " *Id.* at 673, citing *Atkinson, supra.* Because this Court decided *Hawkins* on preclusion grounds, the statement regarding whether the defendant was an equitable parent was not essential to the resolution of the case and is therefore dictum. See *People v Green*, 205 Mich App 342, 346; 517 NW2d 782 (1994). Consequently, because *Hawkins* did not establish a rule of law on the issue before us, there is no authority requiring us to extend the equitable parent doctrine to a situation where the person seeking to assert the doctrine was not married to the natural parent of the child at the time the child was born or conceived, and we think that public policy and judicial restraint prevent us from doing so.

As a general rule, making social policy is a job for the Legislature, not the courts. See *In re Kurzyniec Estate*, 207 Mich App 531, 543; 526 NW2d 191 (1994). This is especially true when the determination or resolution requires placing a premium on one societal interest at the expense of another: "The responsibility for drawing lines in a society as complex as ours—of identifying priorities, weighing the relevant considerations and choosing between competing alternatives— is the Legislature's, not the judiciary's." *O'Donnell v State Farm Mut Automobile Ins Co*, 404 Mich 524, 542; 273 NW2d 829 (1979). In our opinion, accepting

plaintiff's position would, in effect, contravene established policy of this state and establish a right with social implications more appropriately addressed by the Legislature.

The public policy of this state favors the institution of marriage. *McCready v Hoffius*, 222 Mich App 210, 215-216; 564 NW2d 493 (1997). While we do not wish to be viewed as sitting in a proverbial ivory tower unaware of shifts in what may be socially acceptable to some, the fact remains that extending the equitable parent doctrine in a manner consistent with plaintiff's position promotes conduct contrary to public policy.

It has been held that a relationship that does not meet the statutory requirements for a legal marriage does not give rise to property rights between the parties. *Ford v Wagner*, 153 Mich App 466; 395 NW2d 72 (1986). When discussing whether there should be a division of property between cohabitants, this Court has noted:

> "There are major public policy questions involved in determining whether, under what circumstances, and to what extent it is desirable to accord some type of legal status to claims arising from such relationships. Of substantially greater importance than the rights of the immediate parties is the impact of such recognition upon our society and the institution of marriage. Will the fact that legal rights closely resembling those arising from conventional marriages can be acquired by those who deliberately choose to enter into what have heretofore been commonly referred to as illicit or meretricious relationships encourage formation of such relationships and weaken marriage as the foundation of our family-based society? . . . And still more importantly: what of the children born of such relationships? . . . Does not the recognition of legally enforceable property and custody rights emanating from nonmarital cohabitation in practical effect equate with the legalization of common

law marriage . . . ?" [*Carnes v Sheldon*, 109 Mich App 204, 216; 311 NW2d 747 (1981), quoting *Hewitt v Hewitt*, 77 Ill 2d 49, 58; 394 NE2d 1204 (1979).]

This Court went on to conclude in *Carnes* that "public policy questions of such magnitude are best left to the legislative process, which is better equipped to resolve the questions which inevitably will arise as unmarried cohabitation becomes an established feature of our society." *Carnes, supra* at 216.

In our opinion, if this Court was struck by the magnitude of the public policy questions arising from property disputes in cohabitation situations, there can be no doubt that questions pertaining to the best interests of children in cohabitation situations should be left to the legislative process, especially if one of the cohabitants seeking custody or visitation is not biologically related to the child. In addition, because one of defendant's children was born after the parties ended their cohabitation, the policy questions pertaining to plaintiff's right to visit that child are even greater still because there is even less of a connection between plaintiff and the child. It must be kept in mind that an equitable parent is, in the eyes of the law, entitled to be treated as a natural parent, *Atkinson, supra* at 611, and once a person is recognized as an equitable parent, that status is permanent, *Morofsky, supra* at 337. Because of that, we feel that recognizing a third person as an equitable parent and placing them on par with the child's biological parents when it comes to rights and responsibilities in regard to the child should be done with the utmost care and only after great consideration and deliberation. When there is no legally recognized relationship, such as marriage, between a person and a child's biological

parent, or a legally recognized relationship, such as natural parentage or adoption, between a person and a child, that person is essentially just an interested third party, albeit they may have lived with the child's natural parent and care deeply for the child. See *D G v D M K*, 557 NW2d 235, 242 (SD, 1996). It is not difficult to imagine cases in which multiple third parties could make such a claim. We are well aware of the fact that the overriding concern must be the best interest of the child and that in some circumstances that interest may best be served by recognizing a third party as an equitable parent. However, we are of the opinion that the decision when a third party with no legal relationship to the mother or child should be accorded such recognition, and the considerations behind such a determination, is policy-based and should be legislatively enacted. We agree with the conclusion reached by the California Court of Appeals in a case in which it was asked to recognize a third party, not married to the mother or biologically related to the child, as a parent:

> [E]xpanding the definition of a "parent" in the manner advocated by appellant could expose other natural parents to litigation brought by child-care providers of long standing, relatives, successive sets of stepparents or other close friends of the family. No matter how narrowly we might attempt to draft the definition, the fact remains that the status of individuals claiming to be parents would have to be litigated and resolution of these claims would turn on elusive factual determinations of the intent of the natural mother, the perceptions of the children, and the course of conduct of the party claiming parental status. By deferring to the Legislature in matters involving complex social and policy ramifications far beyond the facts of the particular case, we are not telling the parties that the issues they raise are unworthy of legal recognition. To the contrary, we

intend only to illustrate the limitations of the courts in fashioning a comprehensive solution to such a complex and socially significant issue. [*Nancy S v Michele* G, 228 Cal App 3d 831, 841; 279 Cal Rptr 212 (1991)].

In addition, the propriety of our deference is bolstered by the fact that the Legislature has enacted a comprehensive statutory scheme dealing with issues such as the one in the case at bar. See *Wilson v Acacia Park Cemetery Ass'n*, 162 Mich App 638, 646; 413 NW2d 79 (1987). The preamble[2] to the Child Custody Act, MCL 722.21 *et seq.;* MSA 25.312(1) *et seq.,* states that part of the purpose behind the act was to "declare the inherent rights of minor children" and "establish rights and duties to their custody, support, and parenting time[3] in disputed actions." Because the Legislature has spoken, in detail, in this area, we feel that expansive judicial action would infringe on occupied, legislative ground.

In sum, the equitable parent doctrine has previously been applied only in situations where a child was born or conceived during a marriage, to convey equitable parenting status on a husband who was not the biological father of the child. Because of the magnitude of the policy considerations involved in extending application of the doctrine outside such circumstances and the presence of a complex statutory scheme dealing with such issues, we defer to the Legislature and decline to accord plaintiff equitable parent status.

---

[2] "Although a preamble is not to be considered authority for construing an act, it is useful for interpreting its purpose and scope." *Malcolm v East Detroit*, 437 Mich 132, 143; 468 NW2d 479 (1991).

[3] In 1996 PA 19, the term "visitation" was replaced with "parenting time."

II

Next, plaintiff claims that equitable estoppel should be applied to prevent defendant from denying plaintiff's parentage. We disagree.

Equitable estoppel can be used to estop a "father" who is not biologically related to a child from denying responsibilities associated with paternity. See, e.g., *Bergan, supra; Johns v Johns*, 178 Mich App 101; 443 NW2d 446 (1989); *Nygard v Nygard*, 156 Mich App 94; 401 NW2d 323 (1986); *Johnson v Johnson*, 93 Mich App 415; 286 NW2d 886 (1979). Application of equitable estoppel in such cases predates, and was the basis for, the equitable parent doctrine in *Atkinson*. See *Atkinson, supra* at 609-610, citing *Nygard, supra*, and *Johnson, supra*. However, this Court has continued to distinguish the two and recognize "two doctrines, other than adoption, by which one who is not the biological parent of a child may be legally considered to be the parent of the child—equitable parenthood and equitable estoppel." *Bergan, supra* at 186.

Traditionally, application of equitable estoppel has been in cases in which the parties are married but the husband was not the biological father of the child born during the marriage. See, e.g., *Johns, supra; Nygard, supra; Johnson, supra*. However, this Court recently applied the doctrine to prevent a "father" from denying paternity, although he was never married to the biological mother. *Guise v Robinson*, 219 Mich App 139; 555 NW2d 887 (1996).[4] In *Guise*, this

---

[4] This Court in *Guise* mentioned *Atkinson* and equitable parenthood, but we read the decision as relying on equitable estoppel to reach its conclusion.

Court stated that distinguishing that case from the previous equitable estoppel cases simply because the parties were not married "is a distinction without a difference," and upheld the trial court's grant of the mother's request for support. *Guise* at 146.

Initially, we note that for the same public policy reasons set forth in our discussion of the equitable parent doctrine, had we been asked to decide *Guise*, we may have decided it differently by not allowing the application of equitable estoppel to a situation where the parties were not married. However, we recognize our obligation under Administrative Order No. 1996-4 to follow the holding of *Guise*. With that said, we interpret the holding of *Guise* narrowly and distinguish it from the case at bar. *Guise* relied on equitable estoppel to impose support obligations on a third party, whereas in the case at bar we are asked to apply equitable estoppel against a natural parent to allow a third party parental visitation rights. There is no authority requiring us to apply equitable estoppel in such a manner, and out of judicial restraint, we refuse to do so. While plaintiff's argument that, if he theoretically could be estopped from denying a support obligation, he should have the right to visitation is sound, and there may be some implicit relationship between the duty to support and the right to visitation, *Atkinson, supra* at 609, we feel that in light of the policy considerations at issue, it is necessary to stop the expanding application of equitable estoppel and the corresponding decay of the equitable parent doctrine. Such a holding may seem arbitrary, but we feel strongly that such action is necessary to prevent further, improper, judicial intrusion into this legisla-

tive policy arena. As a result, we decline to apply equitable estoppel in the case at bar.

In addition, we question, from a general standpoint, whether plaintiff can utilize equitable estoppel in the manner he attempts. Equitable estoppel is not a cause of action and therefore provides no remedy. *Hoye v Westfield Ins Co*, 194 Mich App 696, 707; 487 NW2d 838 (1992); see also *Bellows v Delaware McDonald's Corp*, 206 Mich App 555, 561; 522 NW2d 707 (1994). The doctrine is generally available as protection from a defense raised by a defendant or as an aid to the plaintiff, but it has never been recognized as a cause of action in itself. *Hoye, supra* at 705-707. In the case at bar, plaintiff does not assert equitable estoppel as a defense against defendant, or even as an aid to his claim. Plaintiff essentially asserts equitable estoppel as a cause of action and seeks relief on that ground. As a result, we think plaintiff misuses the doctrine.

Plaintiff has failed to state a claim upon which relief can be granted. Therefore, the trial court did not err in granting defendant's motion for summary disposition.

Affirmed.

BANDSTRA, J., concurred.

HOOD, J. (*concurring in part and dissenting in part*). I must respectfully dissent from the part of the majority opinion that rejects plaintiff's equitable estoppel argument.

Plaintiff and defendant cohabited from 1986 to 1991 without the benefit of marriage. On November 25, 1989, defendant gave birth to a daughter. Plaintiff was listed on the birth certificate as the father of the child, the child was given plaintiff's last name, and

plaintiff believed the child to be his. He supported and raised the child after that time. He claims that defendant specifically led him to believe that he was the biological father of the child and that defendant fostered a parent-child relationship between the two. After plaintiff and defendant separated, they continued to maintain an intermittent intimate relationship, and defendant gave birth to a son on October 19, 1993. Plaintiff believes he is listed on the birth certificate as the father of the child. The child was given plaintiff's last name and plaintiff believed the child to be his. He supported and shared equal parenting responsibility for the minor boy after that time. He claims that defendant specifically led him to believe that he was the biological parent of the boy and fostered a parent-child relationship between the two. Plaintiff avers that he had "a very close and loving relationship with both children at all times and both children looked to [him] for all of their daily needs in regard to their health, safety, and welfare." The children received health insurance through plaintiff and were the listed beneficiaries on his life insurance policy.

Defendant filed a paternity action against plaintiff on March 25, 1996, wherein she alleged and swore under oath that plaintiff was the father of the two children. The complaint was later withdrawn by defendant.

At some point the relationship between plaintiff and defendant soured. Plaintiff believes that the cause was his relationship with another woman. Defendant refused to allow plaintiff to see the children and thereafter ordered blood tests. Plaintiff was excluded as being the biological father of the chil-

dren. Plaintiff, wishing to maintain the parent-child relationship that he shared with the children, filed suit for visitation rights. He argued that he was an equitable parent of the children and, as such, was entitled to visitation. In the alternative, he argued that the mother of the children should be estopped from denying his rights as a parent to the children.

The trial court granted summary disposition, finding that the equitable parent doctrine applies only where there has been a marital relationship between the parties and that public policy favored finding against plaintiff. In this appeal, we are asked to extend the doctrine of equitable parenthood to nonmarital relationships or, in the alternative, to find that the doctrine of equitable estoppel bars defendant from depriving plaintiff of the opportunity to visit the children at issue. I agree that we should decline to expand the equitable parent doctrine as requested by plaintiff because I agree that there is no basis for applying the equitable parent doctrine to unmarried couples where there is no biological connection between the man and the child. I would, however, reverse on the grounds of equitable estoppel.

Contrary to the conclusion of the majority, I would find that the principles of equitable estoppel should preclude defendant, under the facts of this case, from arguing that plaintiff should not have visitation rights to the children. In *Johnson v Johnson*, 93 Mich App 415; 286 NW2d 886 (1979), the plaintiff married the defendant knowing that he might not be the biological father of the child she was carrying. He subsequently conducted himself as if he were the father and supported the child for more than nine years. This Court held that the plaintiff, even if he was not

the biological father, was estopped from denying paternity of the child. *Id.* at 419-420. In *Nygard v Nygard*, 156 Mich App 94, 99; 401 NW2d 323 (1986), this Court ruled that the defendant was responsible for child support payments even though he was not the biological parent of the child. The defendant married the plaintiff while the plaintiff was pregnant and he knew the child was not his. Thereafter, he conducted himself as if he were the natural father of the child until the divorce action wherein he attempted to be relieved from paying child support. Applying the rules of equitable or promissory estoppel, this Court upheld the defendant's obligation to pay child support. See also *Johns v Johns*, 178 Mich App 101, 106; 443 NW2d 446 (1989). Recently, this Court extended the equitable estoppel rules to a situation involving unmarried parties. *Guise v Robinson*, 219 Mich App 139; 555 NW2d 887 (1996).

In *Guise*, the parties never married. The plaintiff applied for welfare benefits before the birth of her son. At the time of her application, she informed the Department of Social Services that the defendant was the father of the child. The defendant subsequently acknowledged paternity and for the following nine years treated the child as his son. When the plaintiff finally filed an action for child support, the defendant moved for a paternity blood test. The results of the test excluded him from being the father of the nine-year-old child. Nevertheless, the trial court found that the defendant was estopped from denying paternity and paying child support on the basis of the facts. *Id.* at 143. We agreed, ruling that the fact that the parties were never married was a "distinction without a dif-

ference with respect to the elements of equitable estoppel." *Id.* at 146-147.

Under *Guise*, defendant is free to hold plaintiff liable for support payments because he has always acted as if the children were his. The facts as set forth support that he would be estopped from denying liability for support payments. I respectfully submit that it would be inequitable to hold that plaintiff could be liable for support payments but could not enjoy the benefits of visitation because he is not related to the children by blood. Defendant should be bound by the same rules of equitable estoppel as plaintiff.

> Equitable estoppel arises where a party, by representations, admissions, or silence intentionally or negligently induces another party to believe facts, the other party justifiably relies and acts on that belief, and the other party will be prejudiced if the first party is allowed to deny the existence of those facts. [*Soltis v First of America Bank-Muskegon*, 203 Mich App 435, 444; 513 NW2d 148 (1994).]

According to plaintiff's allegations, defendant led him, her cohabiting partner, into believing he was the father of the children. She allowed and fostered the father-child relationships, placed plaintiff's name on the childrens' birth certificates, gave the children plaintiff's surname, and accepted child support for the children. I would hold that defendant should be equitably estopped from contesting plaintiff's rights to visit the children. Whether, and to what extent, visitation should be allowed would depend upon the trial court's determination of where the best interests of the children lie.

I would reverse and remand for a determination whether visitation is in the best interests of the children and, if so, what visitation is appropriate.