# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

  Plaintiff-Appellee,

v

SAMUEL DEMETRIOUS AMBROSE,

  Defendant-Appellant.

FOR PUBLICATION
October 25, 2016

No. 327877
Allegan Circuit Court
LC No. 14-018928-FH

Before: K. F. KELLY, P.J., and O'CONNELL and BOONSTRA, JJ.

O'CONNELL, J. (*concurring*).

I concur with both the reasoning and the result of the majority opinion. I write separately to emphasize that the Michigan Legislature, as the final arbitrator of public policy in this State, *Van v Zahorik*, 227 Mich App 90, 95; 575 NW2d 566 (1997), has clearly enunciated that a fetus can be a victim under Michigan law. Consistent with Michigan law and Michigan's public policy, the learned trial court concluded that a fetus was a victim for purposes of scoring Offense Variable (OV) 9. I would affirm the majority's and the trial court's well-reasoned decision.

## A. PUBLIC POLICY

At issue in this case are the instructions for scoring OV 9 found in MCL 777.39, which concerns the number of victims. MCL. 777.39(c) directs the trial court to score 10 points if two to nine victims were placed in danger of physical injury or death. The statute defines "victim" broadly and this Court cannot read the word "person" into OV 9. *People v Laidler*, 491 Mich 339, 352; 817 NW2d 517 (2012).

No appellate decision has considered whether a fetus may be counted as a "victim" placed in danger of physical injury or death when scoring OV 9. The facts of this case are reprehensible, leaving no doubt that defendant placed the mother and her fetus in both danger of death and physical injury. The trial court departed from the sentencing guidelines and explained his reasons as follows:

> There's prior domestic violence convictions and I just can't remember when I've been so appalled at a defendant's behavior of what—what cruelty, what total disregard for human life and decency there was in this particular incident. I just can't wrap my head around it. It's probably going to stick with me for quite some time. . . .

* * *

He's holding her underwater when she's in a ditch. This report suggests that he flopped her in the ditch in the water on the side that was paralyzed. I mean callousness to the—to the max degree. It's just—really this is something you'd only do to someone you're trying to destroy and this lady was pregnant. How the defendant could rationalize this is just beyond me. It's just unspeakably inhumanly belligerent and—and disrespectful to the child she was carrying as well as to herself and frightening to anybody in the community that would see any part of this would be just appalled.

* * *

The Court has authority to go over the guidelines when it thinks there's substantial and compelling reasons to do so. The evidence is provided the evidence is objective and verifiable. I've talked about the bruise on the victim, the mud on her face and hair. The scratches that were referred to and the conversations between the two of them. The knife, the fact that she was in a wheelchair and had a stroke and both of those things were known to this defendant. All of these are reasons that make this particular crime one that can legitimately be described as careless [sic, callous?] and one that the guidelines don't really adequately treat in terms of its gravity, its terror.

The idea of being in a ditch in the water when you are a fully healthy person that can struggle against that and come up for air is one thing. Being there when you're a stroke victim and you've just been tossed out of your wheelchair unexpectedly, is an entirely different level of terror. I would acquaint it to what some prisoners in (inaudible) underwent when they were in that prison and were water boarded. Struggling when you know you don't have the—a hope, a prayer of resisting your oppressors and you're likely to drown and knowing that the end of [y]our life almost certainly means your unborn baby is going to die with you and all of that for what, because you're having an argument with a boyfriend of yours and it's just – it's just the stuff of which nightmares and horror films are made of but it's the fact that it got played out in Allegan County[.]

Defendant relies on *People v Guthrie*, 97 Mich App 226; 293 NW2d 775 (1980), for the proposition that unborn babies are not persons and therefore cannot be victims within the meaning of MCL 777.39(c). In the 36 years since *Guthrie* was decided, our Legislature has enacted laws that criminalize actions that harm or have the potential to harm unborn babies. As the trial court recognized, defendant could have been charged under MCL. 750.90a for intentional criminal conduct against a pregnant individual if he acted in wanton or willful disregard of the likelihood that the natural tendency of his conduct would "cause a miscarriage or stillbirth or death or great bodily harm to the embryo or fetus." MCL 750.90b and 90c criminalize intentional conduct and grossly negligent conduct, respectively, against a pregnant individual resulting in miscarriage, stillbirth, death or harm to an embryo or fetus. And MCL 750.90d criminalizes conduct resulting in a vehicular accident with a pregnant individual resulting in miscarriage, still birth, death or injury to the embryo or fetus. Further, in 2002, this

Court extended the defense of others defense to allow the use of deadly force to protect a fetus. *People v Kurr*, 253 Mich App 317, 321, 328; 654 NW2d 651 (2002). (" 'Another' may be a fetus put in danger by an assault to the mother.")

MCL 777.39(c) does not mention the word person: the statute speaks broadly in terms of victims, not persons. *Laidler*, 491 Mich at 352. In light of these developments in the law to criminalize acts against the unborn, to criminalize acts against embryos and fetuses, and the fact that case law defines a fetus as "another," it is clear that fetuses can be victims for the purposes of OV 9 regardless of whether a fetus is a person. Therefore, I concur with the majority opinion.

## B. DEPARTURE SENTENCE

If ever a case would waste judicial resources by a remand for resentencing, it is this case. The trial court's departure was minimal and its reasons for departure were extensive. I note that even if this Court reduced defendant's OV 9 from 10 points to 0 points, defendant's OV score would only change the sentencing guidelines from 14 to 29 months' imprisonment to 12 to 24 months' imprisonment. Defendant's well-deserved departure sentence was 32 months, which only minimally exceeded the lowest guidelines range.

Under *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015), the sentencing guidelines are now only advisory and departure sentences are reviewed for reasonableness. In light of the facts of this case, the trial court's lengthy articulation of its reasons for departing from the guidelines, and the minor extent of the departure, this sentence was clearly not unreasonable—it was well deserved. I conclude the guidelines were properly scored and, even if the guidelines were wrongly scored, a remand for a resentencing under these facts would be a waste of judicial resources.

I concur in affirming the trial court's sentencing decision.

/s/ Peter D. O'Connell