HOYE v WESTFIELD INSURANCE COMPANY

Docket No. 128998. Submitted November 20, 1991, at Lansing. Decided July 6, 1992, at 10:30 A.M.

Alan J. Hoye brought an action in the 15th District Court against Westfield Insurance Company and Mundus and Mundus, Inc., its agent, after a theft-loss claim under a homeowner's policy was denied. The defendants contended that a theft had not occurred because the items had not been taken with an intent to deprive Hoye of the items permanently, but merely to keep them as security for payment for carpentry work done to the insured dwelling. The court, George W. Alexander, J., granted summary disposition for the defendants, dismissing claims of breach of contract and estoppel. The Washtenaw Circuit Court, Edward D. Deake, J., affirmed. The plaintiff appealed by leave granted.

The Court of Appeals *held:*

1. The lower courts correctly ruled that, for purposes of homeowner's insurance, there must be a wrongful taking and asportation of property with intent to permanently deprive the owner before a loss can be considered to have resulted from theft, and that, because the plaintiff suffered no such loss in this case, he had no cause of action for breach of contract.

2. Dismissal of the claim of estoppel was proper because it was equitable rather than promissory in nature. Unlike promissory estoppel, the doctrine of equitable estoppel does not provide a cause of action for damages. The case must be remanded to the district court to enable the plaintiff to recast the estoppel claim against Mundus as a claim of fraud or negligence.

Affirmed but remanded.

1. INSURANCE — HOMEOWNER'S INSURANCE — THEFT.

For purposes of homeowner's insurance, a loss cannot be considered to have resulted from theft unless there was a wrongful

REFERENCES

Am Jur 2d, Estoppel and Waiver §§ 1, 26 *et seq.*; Insurance §§ 497-500, 727.

See the Index to Annotations under Estoppel and Waiver; Insurance.

taking and asportation with intent to permanently deprive the insured of the property taken.

2. ESTOPPEL — EQUITABLE ESTOPPEL.

Equitable estoppel is a doctrine that usually is invoked as a defense; it does not provide a cause of action for damages.

*UAW Legal Services Plan* (by *Jill E. Flora*), for Alan J. Hoye.

*Rogers & Polidori, P.C.* (by *David T. Rogers* and *Robert D. Wilkins*), for Westfield Insurance Company and Mundus and Mundus, Inc.

Before: BRENNAN, P.J., and SHEPHERD and GRIF-FIN, JJ.

SHEPHERD, J. Plaintiff appeals by leave granted from an order of the Washtenaw Circuit Court affirming an order of the 15th District Court that granted summary disposition for defendants West-field Insurance Company and Mundus and Mundus, Inc., and dismissed the claims against them. Plaintiff claimed a theft loss under a homeowner's insurance policy issued by Westfield; Mundus was the insurance agent that sold plaintiff the policy, and plaintiff claimed that an employee of Mundus induced him to replace the missing items before the claim had in fact been approved, resulting in loss to him. Plaintiff also claimed that defendant Richard Colon took the items in question. Plaintiff and Colon reached a settlement on the record, and, although no order dismissing the case against Colon was entered, he is no longer involved in this matter.

Westfield denied the claim on the ground that no theft occurred within the meaning of the policy. Plaintiff filed suit in district court, alleging breach of contract against Westfield and equitable estoppel against defendant Mundus.

Plaintiff hired Colon to work on drywall and stucco in plaintiff's home. Plaintiff was dissatisfied with the job, and on August 11, 1987, his wife told Colon that plaintiff expected him to finish the job and they would discuss payment. Plaintiff's wife left the home to get plaintiff. Plaintiff said that Colon agreed to finish the job while they were gone; Colon claimed that he already had finished the job and was waiting for payment and plaintiff left him waiting for several hours.

When plaintiff arrived home, Colon was gone, and plaintiff discovered that twenty-five items, primarily tools and hardware of various kinds, were missing. Plaintiff reported the incident to the police and, on the next day, called his insurance agent, Mundus. Plaintiff purchased his homeowner's insurance policy from Westfield through Mundus. Plaintiff claimed that, in a telephone conversation, an employee of Mundus told him that the loss was covered and, because he had replacement value coverage, he should buy new items and submit the receipts for reimbursement. Plaintiff did so and submitted a claim totaling $3,790.

Several days later, Colon confronted plaintiff and told him he had taken the property. Plaintiff said that he asked Colon to turn the property over to the police, but Colon did not do so. The police, apparently, did not pursue the matter.

Some time later, Westfield denied plaintiff's claim on the ground that there was no "theft" within the meaning of the policy. Plaintiff sued Westfield, Mundus, and Colon. Colon answered the complaint by letter, in which he claimed that he had finished the job plaintiff hired him to do and had asked plaintiff's wife for payment. He said that plaintiff's wife stated that she had to go get plaintiff and left. Colon said he waited at plaintiff's home for over five hours. When plaintiff did not

return with payment, he was "forced to take" collateral. He also said that he left a note on plaintiff's door stating that he had taken seven specified items that he would return upon payment for his work. Colon said that he left messages on plaintiff's answering machine and went to his home a few days later. Plaintiff persisted in refusing to pay, so Colon refused to return the tools.

After announcing a bench ruling regarding the motion for summary disposition, the district court was about to proceed to trial of plaintiff's claim against Colon. After a recess, the parties informed the court that they had reached an agreement, and they placed a settlement agreement on the record. Colon agreed to return the seven items he had listed in his letter, and plaintiff agreed to pay him $366. The agreement was incorporated into an order entered on February 3, 1989. Neither the settlement nor the order includes any recitation of facts concerning the circumstances under which Colon took the property.

The district court granted defendants' motion for summary disposition following oral argument on January 26, 1989. The court entered an order on May 9, 1989, and plaintiff appealed to the circuit court. The parties waived oral argument, and the circuit court affirmed the district court order on April 23, 1990.

Plaintiff claims that the circuit court erred in affirming the district court's grant of summary disposition and that both lower courts erred in applying a technical, legal definition to the term "theft" in a homeowner's insurance policy. We hold that the term "theft" in the insurance policy includes the element of felonious intent.

The insurance policy in this case insured against

theft of unscheduled personal property under the following provision:

10. Theft, meaning any act of stealing or attempt thereat, including loss of property from a known place under circumstances when a probability of theft exists.

* * *

a. General Theft Exclusions:

This policy does not apply to loss:

(1) if committed by an Insured;

(2) in or to a dwelling under construction or of materials or supplies therefor until completed and occupied;

(3) arising out of or resulting from the theft of any credit card or loss by forgery or alterations of any check, draft, promissory note, bill of exchange, or similar written promise, order or direction to pay a sum certain in money; or

(4) of a precious or semi-precious stone from its setting.

Defendant Westfield refused plaintiff's claim on the ground that the occurrence here was not a theft within the meaning of the policy because Colon did not intend to deprive plaintiff of the property permanently. Westfield contends, and both lower courts agreed, that the terms "theft" and "stealing" invoke definitions from the criminal law, and that larceny and related "theft" crimes require a specific intent to deprive the owner of the property permanently.

Defendant Westfield cites *Daugherty v Thomas,* 174 Mich 371, 378; 140 NW 615 (1913), for a definition of "steal" that includes felonious intent. In *Daugherty,* the Court considered the validity of the then recently enacted owner's liability statute with respect to motor vehicle accidents. The statute provided that the owner of a vehicle was liable

for an injury caused by the negligent operation of the vehicle by any person. 1909 PA 318, § 10(3). The statute allowed the following exception: "but such owner shall not be so liable in case such motor vehicle shall have been stolen." *Id.* In *Daugherty,* a repairman with whom the owner left the car for repairs struck and injured the plaintiff while driving the car without the owner's knowledge or consent. The question was whether that situation was within the statutory exception. The Court held that it was not:

> The word "stolen" can have but one meaning when used in connection with personal property, as in this case. To steal is to commit larceny. The word "steal" has a uniform signification when used in connection with personal property, and in common, as well as in legal parlance means, the felonious taking and carrying away of the personal goods of another. [*Daugherty,* 174 Mich 378.]

This passage from *Daugherty* strongly supports Westfield's position. The reference to common usage of the term may have been dicta, but the Court unequivocally considered the word "steal" to include the felonious intent element of larceny.

A similar issue was apparently raised by the defendant in *Wetzel v Cadillac Mutual Ins Co,* 17 Mich App 57; 169 NW2d 128 (1969). This Court, however, decided the case on other grounds and did not address the question whether the person who took the plaintiff's car had the intent permanently to deprive the owner of the property within the meaning of the theft provision of an automobile insurance policy. In that opinion, however, the Court implied, but did not hold, that theft within the meaning of the insurance policy included the elements of common-law larceny. *Id.,* p 60.

The position of a majority of the other jurisdic-

tions, and one adopted by authors of major treatises, agree with Westfield that in order to constitute loss by theft under an insurance policy, there must be a wrongful taking and asportation with intent to deprive the owner of property permanently. *Home Fire & Marine Ins Co v E V McCollum & Co,* 201 Okla 595; 207 P2d 1094 (1949); *Penn-Air, Inc v Indemnity Ins Co,* 439 Pa 511, 518-519; 269 A2d 19 (1970); *Van Vechten v American Eagle Fire Ins Co,* 239 NY 303, 305; 146 NE 432 (1925); *Hayes v Financial Indemnity Co,* 118 Cal App 2d 883, 894; 257 P2d 765 (1953) (see pp 886-894 for summaries of cases holding the majority and the minority views); 10A Couch, Cyclopedia of Insurance Law (2d ed), § 42:116, pp 250-251; anno: *What constitutes theft within automobile theft insurance policy—modern cases,* 67 ALR4th 82. One treatise notes that even where the courts have extended the meaning of "theft" beyond common-law larceny to include embezzlement, swindling, or the like, the common requirement is that there be intent to deprive the owner of the property permanently. 5 Appleman, Insurance Law & Practice, § 3171, pp 490-491.

Accordingly, we hold that the trial court correctly granted summary disposition in favor of Westfield.

With respect to Mundus, count II of plaintiff's complaint reads as follows:

16. At all times herein, Defendant, Mundus and Mundus, Inc., held themselves out as agents for Defendant Westfield Insurance Company.

17. On or about August 12, 1987, upon filing a Proof of Loss with Defendant, Mundus and Mundus Inc., Plaintiff was advised by an employee of Defendant Mundus and Mundus Inc., to replace the stolen items.

18. In reliance upon Defendant, Mundus and

Mundus Inc.'s representations, Plaintiff replaced many of the stolen items at his own expense.

19. Defendant, Westfield Insurance Company, has refused to reimburse Plaintiff for money spent.

20. As a proximate result of Defendant Mundus and Mundus Inc.'s representations, Plaintiff has sustained damages in the amount of Four Thousand ($4,000.00) Dollars.

The district court granted summary disposition for Westfield and Mundus with respect to this count, stating:

Defendant's [Westfield] Motion for Summary Disposition is granted. As to the Defendant Mundus and Mundus, the law is clear that an insurance agent is not responsible for the payment of a loss under an insurance policy, and nothing that they did could be construed as estoppel.

The circuit court affirmed on similar reasoning.

On appeal, plaintiff argues that "the doctrine of estoppel" entitles him to relief for Mundus' representation that "the theft was covered by [plaintiff's] homeowner's insurance policy, [and] that he should replace the stolen items and submit his receipts for full reimbursement." Plaintiff continues:

Plaintiff relied on these representations and replaced many of the stolen items at his own expense. The insurance agent was in a position of authority with regard to Plaintiff's insurance coverage. Plaintiff was entitled to rely on the agent's representations. It would be inequitable after the fact for Defendant [Westfield Insurance Company?] to be permitted to deny coverage for those items already replaced.

In his opinion, Judge Alexander stated that nothing that the insurance agent did could be construed as estoppel. . . . This is a finding of fact

which is disputed. Defendants argue that the agent only explained a claims procedure. . . . *Plaintiff has alleged in his complaint* that an employee of the agent told Plaintiff to replace the stolen items and that Plaintiff relied on this representation and replaced many of the stolen items. [Emphasis added.]

Thus, plaintiff argues, to the extent the trial court granted summary disposition pursuant to MCR 2.116(C)(10), it erred.

Plaintiff also argues:

Plaintiff[']s complaint sets forth sufficient allegations to support plaintiff[']s claim for damages against Westfield Insurance Company for breach of contract and against Defendants Mundus & Mundus and Westfield Insurance Company for detrimental reliance or equitable estoppel.

We agree that plaintiff failed to state a claim upon which relief can be granted, MCR 2.116(C)(8) —or at least has failed to explain how the facts that were pleaded support a cognizable claim. We affirm the trial court's grant of summary disposition, albeit for different reasons. However, we remand to give plaintiff an opportunity to amend his pleadings. MCR 2.116(C)(8), 7.216(A)(7).

Plaintiff's argument that he has stated a claim against defendant insurance agent is premised on the assumption that equitable estoppel constitutes a cause of action. Although there may be occasional aberrant opinions, the general rule is that equitable estoppel is a doctrine, not a cause of action. A distinction must be made between promissory estoppel and equitable estoppel. Plaintiff asserts that the doctrine of equitable estoppel is applicable here. The elements of promissory estoppel are set forth in *Parkhurst Homes, Inc v Mc-*

*Laughlin,* 187 Mich App 357, 360-361; 466 NW2d 404 (1991):

> (1) a promise, (2) that the promisor reasonably should have expected to induce action of a definite and substantial character on the part of the promisee, (3) which in fact produced reliance or forbearance of that nature, and (4) in circumstances requiring that the promise be enforced if injustice is to be avoided.

Equitable estoppel arises where

> a party, by representations, admissions, or silence, intentionally or negligently induces another party to believe facts, the other party justifiably relies and acts on this belief, and will be prejudiced if the first party is permitted to deny the existence of those facts. [*Southeastern Oakland Co Incinerator Authority v Dep't of Natural Resources,* 176 Mich App 434, 442-443; 440 NW2d 649 (1989).]

It has been held that "the major distinction between equitable estoppel and promissory estoppel is that equitable estoppel is available only as a defense, while promissory estoppel can be used as a cause of action for damages." *Tiffany Inc v WMK Transit Mix, Inc,* 16 Ariz App 415, 419; 493 P2d 1220 (1972).

Thus, a panel of this Court has said:

> [W]e would further note that equitable estoppel or estoppel in pais is available as protection from a defense raised by the defendant. It is not available to the plaintiff in stating a cause of action. *Dickerson v Colgrove,* 100 US 578; 25 L Ed 618 (1880). [*Harrison Twp v Calisi,* 121 Mich App 777, 787; 329 NW2d 488 (1982).]

Notwithstanding the dicta in *Calisi,* our Courts

have apparently allowed plaintiffs to avail themselves of the doctrine. See 1 Michigan Pleading & Practice, § 8.33, p 426 ("if rights relied upon are based upon estoppel of the opposite party to assert them, they must be set up in the complaint to show the estoppel"). See also *Cuddihy v Wayne State University Bd of Governors,* 163 Mich App 153, 156-157; 413 NW2d 692 (1987) (distinguishing promissory from equitable estoppel, and concluding that plaintiff's complaint sounded in the latter, but not stating that former does not constitute a cause of action). Indeed, one panel has held that it was error for the trial court not to instruct the jury with regard to an equitable "estoppel cause of action." *AAMCO Automatic Transmissions, Inc v Motor Trans, Inc,* 45 Mich App 539, 545-546; 207 NW2d 156 (1973).

In our view, Prosser's discussion of equitable estoppel in connection with misrepresentation is correct:

> For obvious reasons, it appears most frequently as a defense to an action brought by the party to be estopped; but, *while it never has been recognized as a cause of action in itself, it may serve as an important, or even the sole, aid to the plaintiff.* Thus a warehouseman, who represents that he holds goods for another in response to an inquiry by an intending purchaser from that other, or one who informs such a purchaser that his signature forged to a negotiable instrument is genuine, may be estopped to deny the truth of his statement if the purchase is made in reliance upon it; or a corporation which fails to require surrender of an old stock certificate when a new one is issued may find itself estopped as against a holder for value of the old certificate. In such cases the plaintiff prevails, not on the theory that the defendant's mis-

representation is tortious in itself, but because the defendant is not allowed to assert the truth, which would otherwise be a defense to some other action. Estoppel, of course, is not confined to tort cases, and runs throughout the entire field of law. [Prosser, Torts (4th ed), § 105, pp 691-692. Emphasis added.]

In summary, equitable estoppel is a doctrine that might assist plaintiff; it is not a cause of action and therefore provides no remedy such as damages. In this case, it appears that plaintiff's attempt to set forth a claim against the insurance agency on the basis of the alleged (mis)representation of its employee could fall into one of the following categories (other than the nonexistent claim of equitable estoppel): fraud or negligence. A careful reading of count II of plaintiff's complaint leads one to conclude that this was the thrust of plaintiff's claim although the count is inartfully stated.[1]

We remand to the district court in order to give plaintiff an opportunity to plead a claim of fraud or to state properly a claim of negligence against defendant Mundus only.

We affirm with regard to defendant Westfield Insurance Company. We do not retain jurisdiction.

Affirmed in part and remanded.

---

[1] Plaintiff's pleadings do not clearly allege a claim against Westfield arising out of the misrepresentations of Mundus. To the extent that Mundus made false representations to plaintiff, Mundus was acting outside the scope of its agency. There was a precise method for filing claims, which method did not include replacing the items before Westfield had approved the claim. There is nothing before us to justify any claim that the alleged misrepresentations amounted to anything other than negligence or fraud on the part of the insurance agency acting without the authority of Westfield. We make no comment regarding the truth of plaintiff's claim against Mundus or his ability to prove any damages.