## BRIGGS v THE UPJOHN COMPANY

Docket No. 136340. Submitted December 9, 1992, at Lansing. Decided
June 7, 1993, at 9:50 A.M.

Janice R. and John M. Briggs, III, brought a products liability
action in the Muskegon Circuit Court against The Upjohn
Company, seeking damages resulting from John Briggs' at-
tempted suicide, which had occurred after he had ingested the
drug Halcion, manufactured and sold by Upjohn. Upjohn
moved for and received a protective order of confidentiality
covering documents the plaintiffs requested during discovery.
The order provided that its terms could be modified by the trial
court during discovery upon a showing of need and good cause.
Mediation resulted in an evaluation of $75,000 for the plain-
tiffs, which all the parties accepted. The court, Ronald H.
Pannucci, J., entered a judgment and order in favor of the
plaintiffs. The trial court then granted the plaintiffs' motion to
vacate the protective order with regard to the approximately
25,000 documents that the plaintiffs had photocopied. Upjohn
appealed by leave granted from the order vacating the protec-
tive order.

The Court of Appeals *held:*

The plaintiffs should be estopped from renouncing the protec-
tive order after stipulating to its terms, receiving its benefits,
and thereby inducing Upjohn to produce confidential docu-
ments in reliance on the protective order's provisions concern-
ing confidentiality and the return of the documents. The trial
court abused its discretion because no documentary review of
the great majority of the documents, as required by the protec-
tive order, was conducted and the plaintiffs acted in bad faith
in moving to vacate the protective order.

Reversed.

MICHAEL J. KELLY, P.J., concurred in the reversal of the
order vacating the protective order in toto, finding that the
trial court went too far in abolishing the protective order and
in ordering the wholesale declassification of all the documents,
but dissented from the majority's finding that the plaintiffs
acted in bad faith in moving to vacate the protective order. The
motion to vacate was procedurally proper and was contem-

plated by the protective order itself. The order vacating the
protective order should be reversed but without prejudice.

*Sommers, Schwartz, Silver & Schwartz, P.C.* (by
*David R. Getto* and *Richard D. Toth*), for the
plaintiffs.

*Warner, Norcross & Judd* (by *Douglas E. Wag-
ner* and *James Moskal*), and *Shook, Hardy &
Bacon* (by *Andrew See, David W. Brooks,* and
*Robert J. McCully*), for the defendant.

Before: MICHAEL J. KELLY, P.J., and FITZGERALD
and TAYLOR, JJ.

TAYLOR, J. In this products liability case, defen-
dant appeals by leave granted the Muskegon Cir-
cuit Court order vacating an earlier protective
order that prevented the dissemination of docu-
ments obtained through discovery. We reverse.

In their suit against defendant, plaintiffs alleged
that plaintiff John Briggs' ingestion of Halcion,
manufactured and sold by defendant Upjohn, was
a factor leading him to attempt suicide. Although
this attempt was unsuccessful, he contended that
he was seriously maimed as a result of the at-
tempt.[1] Defendant moved for a protective order of
confidentiality covering the documents plaintiffs
requested from defendant during discovery. The
parties ultimately agreed that, among other
things, plaintiffs would be allowed full access to
the documents without the necessity of individual
review of each document by the court; in return,
plaintiffs agreed that they would not divulge the
contents of the documents, except as necessary for
purposes of the lawsuit. Although counsel for
plaintiffs were entitled to use discovered docu-
ments in their own related cases, it was agreed

---

[1] Mrs. Briggs' claims were derivative of her husband's.

that, when the case was over, plaintiffs would return the documents to Upjohn. A comprehensive protective order containing the terms of the agreement was entered. The order provided that its terms could be modified by the trial court during discovery upon a showing of "need and good cause."

This arrangement worked well: over 400,000 documents were produced, of which approximately 25,000 were photocopied. Mediation was eventually conducted and resulted in an evaluation of $75,000 for plaintiffs. This evaluation was accepted by all. However, very soon afterward, plaintiffs moved to vacate the protective order with regard to all of the approximately 25,000 documents that were copied, and, after a hearing regarding the motion, the trial court granted the motion to vacate. In contravention of the terms of the protective order pertaining to the subsequent release of the documents, the trial court reviewed fewer than one percent of the documents that were ordered released. In short, the trial court took action under the aegis of the provision of the order allowing modification upon a showing of "need and good cause" as if that provision gave it carte blanche for canceling the terms of the agreement of the parties that supported the order.

Defendant's first claim on appeal is that plaintiffs lacked standing to seek vacation of the protective order once the mediation evaluation was accepted and the case concluded. In view of the fact that the protective order purports to control the parties in perpetuity with respect to these discovery documents, we will assume, for the sake of argument, that plaintiffs had standing to attack the protective order. However, we agree with defendant's second argument, i.e., that plaintiffs should be estopped from renouncing the protective

order after stipulating to its terms, receiving its benefits, and thereby inducing defendant to produce confidential documents in reliance upon the protective order's provisions concerning confidentiality and the return of documents. We note that even if abolition, as opposed to modification of the protective order, was within the trial court's authority, in light of the parties' agreement, the trial court abused its discretion[2] here because no documentary review of the great majority of the documents, as required by the pertinent provisions of the protective order, was ever done by the trial court before its ruling and plaintiffs acted in bad faith in moving to vacate the protective order. To allow plaintiffs to prevail with regard to such a motion is to undermine the parties' efforts to agree on umbrella protective orders in complex cases and to destroy discovery as we know it. *Zenith Radio Corp v Matsushita Electric Industrial Co, Ltd,* 529 F Supp 866, 889, 894 (ED Pa, 1981). See also *Hoye v Westfield Ins Co,* 194 Mich App 696, 705; 487 NW2d 838 (1992).

Reversed.

FITZGERALD, J., concurred.

MICHAEL J. KELLY, P.J. *(concurring in part and dissenting in part).* I concur in reversing the trial court's order vacating the protective order in toto. The trial court went too far in abolishing the protective order and in ordering the wholesale declassification of all documents. However, the majority goes too far in finding that the plaintiffs acted in bad faith in moving to vacate the protective order. There is no predicate for such a gratuitous finding, and, indeed, the terms of the order

---

[2] MCR 2.302(C); *Marketos v American Employers Ins Co,* 185 Mich App 179, 197; 460 NW2d 272 (1990).

prohibiting dissemination of the documents outside this or related litigation was open to variation by the terms of the order itself. Self categorization by the defendant was not intended to forever consign to secrecy the documents produced. A mechanism for judicial overview was provided and most appropriate.

Two aspects of the flexibility of the arrangement require comment. First of all, documents produced by Upjohn before February 5, 1990, were not protected by the order. Their dissemination was not restricted. Secondly, even documents protected and bearing the designation contemplated by the order could be copied or disseminated unless application was made to the trial court in opposition thereto and an order obtained to that effect. The penultimate paragraph of the order of February 21, 1990, is set forth here in its entirety to evidence what I consider to be the understanding of the parties that some documents would flag a compelling reason for disclosure and publication of such was contemplated.

> 12. After the discovery cut-off in this case has expired, any party desiring to disseminate confidential documents in any manner not specifically authorized by this protective order, is required to notify the other party at least 15 days before any anticipated dissemination of documents. Such notification shall be in writing and shall include a detailed listing or description of all documents which the notifying party intends to disseminate and also identify the persons or entities to whom the documents will be disseminated. If the parties cannot stipulate to the proposed dissemination of documents, the party opposing dissemination has the burden to make application within 15 days from receipt of such notice to the Court for an order enjoining the dissemination of all or part of the subject documents, upon a reasonable showing why such documents should not be disseminated

as proposed. No documents shall be disseminated under the procedure set forth in this paragraph without the stipulation of the parties or approval by the Court.

Not only was plaintiffs' motion to vacate the protective order procedurally proper and contemplated by the order itself, respectable authority exists that the trial court retains ultimate discretion to modify or even to abolish a protective order. See *Krause v Rhodes,* 671 F2d 212, 219 (CA 6, 1982).

Finally, I don't see any parade of horrors that would necessarily follow the declassification of protective orders in drug cases, complex or otherwise. The only quarrel I have is with the trial court's wholesale declassification of the voluminous material here without reviewing the documents or providing an orderly procedural method for the evaluation of arguments regarding whether the documents in question are entitled to continuing protection. Because the majority prevails here, I do not feel compelled to provide or outline any such mechanism in this dissent. I can see where the trial court would be horrified at the prospect of reviewing 25,000 documents item by item, but the problem is not irresistible.

While I join in reversal, I would order it to be without prejudice. I believe the trial court had it well within its authority and discretion to declassify any or all of the documents upon appropriate findings, or if based upon appropriate review or analysis, by a delegated authority. Furthermore, if on remand plaintiffs move to vacate the protective order, and if defendant asserts entitlement to continued protection pursuant to MCR 2.302(C)(8), the trial court should examine the challenged documents in camera, or make some other appropriate mechanism for screening them, and develop a record adequate for appellate review.