*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DEBORAH MCLELLAN,

      Plaintiff-Appellant,

v

CONSTANZIA HOOKER and UNCORKBUILD,

      Defendants-Appellees.

UNPUBLISHED
November 14, 2025
10:14 AM

No. 371115
Wayne Circuit Court
LC No. 22-010517-CH

Before: RIORDAN, P.J., and WALLACE and TREBILCOCK, JJ.

PER CURIAM.

Plaintiff Deborah McLellan appeals as of right the trial court's February 5, 2024 order granting summary disposition in favor of defendants Constanzia Hooker and UNCORKbuild, LLC. On appeal, plaintiff argues that the trial court erred because her five legal claims, and accompanying documentary support, were sufficient to withstand a motion for summary disposition under MCR 2.116(C)(8) (failure to state a claim) and (C)(10) (no genuine issue of material fact). For the reasons set forth, we affirm the trial court in part, reverse in part, and remand to that court for further proceedings.

## I. FACTS

The underlying dispute in this case involves real property in Detroit that was purchased by plaintiff in June 2022 from a non-party for $52,000, but thereafter titled in the name of defendant UNCORKbuild. In September 2022, plaintiff filed her complaint against defendants, alleging, in relevant part:

    ¶ 8. The Defendant Hooker was the "spiritual" advisor and paid therapist for the Plaintiff, having been paid $7,200.00 in advance for 18 months of therapy sessions, and in these capacities had a continuing professional and fiduciary relationship with the Plaintiff.

    ¶ 9. Upon information, knowledge and belief, the Defendant Hooker learned of a ministry plan of the Plaintiff to create a ministry in the City of Detroit that included purchasing a physical site.

-1-

* * *

¶ 11. Plaintiff was requested by Defendant Hooker to provide, and Plaintiff did provide, $5,000.00 to Defendant Hooker for the purpose of creating UNCORKbuild, a domestic nonprofit corporation, for which she was invoiced and billed.

¶ 12. The Plaintiff was encouraged by Defendant Hooker to purchase the Property located at 14050 Sussex Street, Detroit MI 48227 for the purpose of conducting Plaintiff's ministry and creating a location from which the Defendants could operate.

* * *

¶ 15. Plaintiff signed a purchase agreement dated June 17, 2022 for the Property for $52,000.00 cash and completed the purchase on June 24, 2022, providing all of the financing, including the closing costs.

¶ 16. Plaintiff was manipulated by representations and actions of Defendant Hooker, to have the purchase titled in the name of Defendant Hooker's corporation, UNCORK, to better facilitate the relationship between the parties.

* * *

¶ 18. On 6/27/2022 the Defendant Hooker met Plaintiff at the Property where the Defendant Hooker informed Plaintiff that the Property would not be available to the Plaintiff as a House of Prayer, as represented and agreed to, but was to be rented out by Defendant Hooker as a bed & breakfast for the Defendant Hooker's own benefit and that "maybe the next one" would be available to the Plaintiff.

¶ 19. The Plaintiff, who received a key at the closing, has been denied the use of the Property and any access, as the locks where [sic] changed by Defendant Hooker after the closing, and Plaintiff was not given a key.

In light of these allegations, plaintiff maintained five separate counts: (1) fraudulent misrepresentation "regarding the use of the Property and the relationship of the parties in connection with the Property"; (2) innocent misrepresentation "in connection with the making of an agreement between Plaintiff and Defendants"; (3) undue influence and breach of fiduciary duty because "Plaintiff was manipulated into a relationship of trust by Defendant Hooker for Defendant Hooker's professional and financial gain"; (4) "equitable estopple [sic]" because plaintiff supplied the financing for the subject property "in reliance on Defendant Hooker's representations that the Property would be used by Plaintiff for her ministry as the House of Prayer"; and (5) quiet title because "Plaintiff possesses a legal and equitable interest in the Property."

In August 2023, defendants moved for summary disposition under MCR 2.116(C)(8) and (C)(10). In the accompanying brief, defendants argued that any property allegedly given by plaintiff to defendant UNCORKbuild was a gift as a matter of law, such that it could not be recalled

by plaintiff. Defendants also argued that defendant Hooker could not be sued in her personal capacity because she was shielded by the LLC nature of defendant UNCORKbuild, and plaintiff did not allege facts to pierce the corporate veil.[1]

The following month, plaintiff filed her response to defendants' motion for summary disposition. In her response, plaintiff asserted that the transfer of the subject property to defendant UNCORKbuild is presumed to be the result of undue influence because defendant Hooker was plaintiff's spiritual advisor, that equitable estoppel applies because plaintiff relied upon defendant Hooker's representations that she would have possession and control of the subject property, and that there was no evidence that plaintiff intended to donate a gift to defendants. In support of her response brief, plaintiff submitted an affidavit essentially reiterating the allegations in her complaint to the effect that "[t]he Plaintiff was to have possession and control of the Property with complete liberty to operate at the Detroit House of Prayer," yet defendants denied her access to the subject property a few days after closing. Plaintiff also submitted copies of the following relevant documents: (1) a purchase agreement indicating that on or about June 18, 2022, she agreed to pay $52,000 to Empire Realty Group for the subject property; (2) two cashier's checks dated June 24, 2022, from plaintiff to Empire Realty Group totaling $52,000; (3) a November 24, 2020 e-mail from defendant Hooker to plaintiff indicating that defendant Hooker charged plaintiff $7,200, which represented "approx 16 months of sessions"; (4) a June 24, 2022 quitclaim deed transferring the subject property from Richard Hocini to defendant UNCORKbuild for $1.00; and (5) various July 2022 e-mails and text messages from defendant Hooker indicating that she was planning on using the subject property as a rental.

In January 2024, defendants filed an amended motion for summary disposition pursuant to MCR 2.116(C)(8) and (C)(10). In the accompanying brief, defendants argued that they were entitled to summary disposition because (1) plaintiff "is not the grantee of the subject property and furthermore, never held an interest in the property"; (2) plaintiff failed to comply with MCR 3.411, which requires a quiet-title plaintiff to attach written evidence of title to the pleadings, as well as MCR 2.205, which requires joinder of necessary parties; (3) plaintiff donated an irrevocable gift; and (4) plaintiff failed to timely comply with discovery and submitted documents to the trial court that should have been disclosed during discovery, yet were not.

---

[1] In response to the factual allegations of plaintiff's complaint, defendants asserted on page three their brief:

> Plaintiff has historically been involved with spiritual organizations. She was offered several options for participating in Defendant UNCORK. She tried to become an employee and help get the prayer house off the ground and into a functioning state of affairs. Unfortunately, Plaintiff did not have the required skills and stamina for this position and quickly "threw in the towel" and no longer sought to actively participate in the organization and its vast workload. The parties stopped communicating. After this time she soured on all aspects of UNCORK and eventually sued.

At the motion hearing, the parties argued consistent with their respective briefs. The trial court then placed its opinion on the record, stating as follows:

> There's a deed by Ruby Ponder Audubon Ponder as husband and wife to Richard Hocini, that deed was recorded November 5, 2021. Then Richard Hocini deeded the property UNCORK Building Corp and that deed was dated June 27, 2022.
>
> The Plaintiff, Deborah McLellan, her name does not appear at all in the chain of title. Perhaps she gave a gift to UNCORK Building Corporation, I don't know, but the Courts have to go by deeds and the chain of title, and she does not appear in the chain of title in this case.
>
> So the Court is going to grant the Motion for Summary Disposition for the reasons I just stated and also the arguments of Defense counsel.

A few days later, the trial court entered its written order granting summary disposition in favor of defendants "for the reasons stated on the record." This appeal followed.

## II. STANDARD OF REVIEW

"A motion for summary disposition under MCR 2.116(C)(8) tests the legal sufficiency of the claim on the basis of the pleadings alone and the ruling is reviewed de novo." *Bailey v Schaaf*, 494 Mich 595, 603; 835 NW2d 413 (2013). "The motion must be granted if no factual development could justify the plaintiff's claim for relief." *Id*. (quotation marks and citation omitted).

"This Court reviews de novo a circuit court's decision on a motion for summary disposition under MCR 2.116(C)(10)." *Charter Twp of Canton v 44650, Inc*, 346 Mich App 290, 308; 12 NW3d 56 (2023). "Summary disposition under MCR 2.116(C)(10) is proper if there is no genuine issue about any material fact and the moving party is entitled to judgment as a matter of law." *Id*. "In reviewing the circuit court's decision, this Court considers affidavits, pleadings, depositions, admissions, and documentary evidence filed in the action or submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion." *Id*. (quotation marks and citation omitted). "Where the burden of proof on a dispositive issue rests on a nonmoving party, the nonmoving party may not rely on mere allegations or denials in pleadings, but must go beyond the pleadings to set forth specific facts showing that a genuine issue of material fact exists." *Id*. (cleaned up). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *Id*. at 308-309 (quotation marks and citation omitted).

"A trial court's decision concerning equitable issues is reviewed de novo . . . ." *Eller v Metro Indus Contracting, Inc*, 261 Mich App 569, 571; 683 NW2d 242 (2004).

## III. DISCUSSION

Plaintiff argues that the trial court erred by dismissing each of the five counts alleged in her complaint. With regard to the fourth count, which she labeled as "equitable estopple [sic]" in

her complaint, plaintiff asserts that the claim should have been labeled as promissory estoppel. Defendants respond that the trial court correctly dismissed all five counts because they are meritless. Defendants alternatively argue that the transfer of the subject property constituted an irrevocable gift from plaintiff to defendant UNCORKbuild, which would defeat the various equitable claims set forth in plaintiff's complaint.

We agree with defendants that the trial court properly dismissed the first, second, third, and fifth counts of plaintiff's complaint. However, we disagree with defendants that the trial court properly dismissed the fourth count of plaintiff's complaint. Further, we disagree with defendants that, on the record as it currently exists, the transfer of the subject property constituted an irrevocable gift from plaintiff to defendant UNCORKbuild.[2]

## A. MISREPRESENTATION

Plaintiff argues that she established claims for fraudulent misrepresentation and innocent misrepresentation, and the trial court erred by dismissing counts one and two of her complaint. Defendants respond that the trial court correctly dismissed those two counts because, in relevant part, misrepresentation cannot be based upon future promises. We agree with defendants.

The elements of fraudulent misrepresentation are as follows:

(1) the defendant made a material representation; (2) the representation was false; (3) when the defendant made the representation, the defendant knew that it was false, or made it recklessly, without knowledge of its truth as a positive assertion; (4) the defendant made the representation with the intention that the plaintiff would act upon it; (5) the plaintiff acted in reliance upon it; and (6) the plaintiff suffered damage. [*Bergen v Baker*, 264 Mich App 376, 382; 691 NW2d 770 (2004) (quotation marks and citations omitted).]

"[A]n action for fraudulent misrepresentation must be predicated upon a statement relating to a past or an existing fact. Future promises are contractual and do not constitute fraud." *Hi-Way Motor Co v Int'l Harvester Co*, 398 Mich 330, 336; 247 NW2d 813 (1976). That is, a "broken" promise is "merely a breach of contract, which must be enforced by an action on the contract, if at all." *Higgins v Lawrence*, 107 Mich App 178, 185; 309 NW2d 194 (1981).

"A claim of innocent misrepresentation is shown if a party detrimentally relies upon a false representation in such a manner that the injury suffered by that party inures to the benefit of the party who made the representation." *M & D, Inc v McConkey*, 231 Mich App 22, 27; 585 NW2d 33 (1998).

---

[2] On appeal, defendants summarily observe that plaintiff failed to timely provide discovery in accordance with the court rules. However, the trial court did not rule upon that matter, and it has not been sufficiently briefed before us. Thus, we decline to rule upon any possible discovery sanctions at this time.

The innocent misrepresentation rule represents a species of fraudulent misrepresentation but has, as its distinguished characteristics, the elimination of the need to prove a fraudulent purpose or an intent on the part of the defendant that the misrepresentation be acted upon by the plaintiff, and has, as added elements, the necessity that it be shown that an unintendedly false representation was made in connection with the making of a contract and that the injury suffered as a consequence of the misrepresentation inure to the benefit of the party making the misrepresentation. Thus, the party alleging innocent misrepresentation is not required to prove that the party making the misrepresentation intended to deceive or that the other party knew the representation was false. Finally, in order to prevail on an innocent misrepresentation claim, a plaintiff must also show that the plaintiff and defendant were in privity of contract. [*Id*. at 27-28 (cleaned up).]

As with fraudulent misrepresentation, "[a] promise regarding the future cannot form the basis of [an innocent] misrepresentation claim." *Forge v Smith*, 458 Mich 198, 212; 580 NW2d 876 (1998).

Here, plaintiff did not allege in her complaint that defendants misrepresented a prior or then-existing fact when the subject property was purchased and transferred in June 2022. Rather, plaintiff alleged that the parties agreed that the subject property would be available for her use as a "House of Prayer," but that a few days after closing, defendant Hooker informed her that the property would be used as a rental or "bed & breakfast" instead. Plaintiff included similar allegations in her affidavit submitted in response to defendants' motion for summary disposition. While plaintiff did summarily assert that defendants made "misrepresentations," when her complaint and affidavit are fairly considered in context, the essence of her issue is simply that defendants failed to fulfill their agreement with her to allow the subject property to be used as a "House of Prayer." This allegedly broken promise by defendants, seemingly the result of a falling-out between plaintiff and defendant Hooker shortly after closing, cannot be remedied through a claim for fraudulent or innocent misrepresentation. See *Higgins*, 107 Mich App at 185; *Forge*, 458 Mich at 212. Consequently, we affirm the trial court's dismissal of those two counts under MCR 2.116(C)(8) and (C)(10).

## B. UNDUE INFLUENCE

Plaintiff argues that she established a claim for undue influence and that the trial court erred by dismissing count three of her complaint. Specifically, plaintiff claims that she had a fiduciary relationship with defendant Hooker because defendant Hooker was her therapist, thereby creating a presumption of undue influence when she purchased and transferred the subject property in June 2022. Defendants respond that defendant Hooker was not a licensed therapist, so there was no fiduciary relationship, and that plaintiff failed to allege an underlying misrepresentation or other

type of coercion to sustain the undue-influence claim. We agree with defendants' second argument.[3]

Initially, we note that claims of undue influence and breach of fiduciary duty are separate but closely related. See *In re Estate of Berry*, 277 Ill App 3d 1088, 1090-1092; 661 NE2d 1150 (Ill Ct App, 1996). Simply put, an undue-influence claim may be based upon a fiduciary relationship between the parties, *Bill & Dena Brown Trust v Garcia*, 312 Mich App 684, 701; 880 NW2d 269 (2015), but such a relationship is not necessary, *In re Estate of Berry*, 277 Ill App at 1091. The relevance of a fiduciary relationship in the context of an undue-influence claim is that the mere existence of a fiduciary relationship creates a rebuttable presumption that the transaction at issue was the result of undue influence. See *Garcia*, 312 Mich App at 701-702. In this case, while not entirely clear, the allegations in plaintiff's complaint are more consistent with an undue-influence claim as opposed to a freestanding breach-of-fiduciary-duty claim. Thus, we proceed on that basis.

"To establish undue influence it must be shown that the grantor was subjected to threats, misrepresentation, undue flattery, fraud, or physical or moral coercion sufficient to overpower volition, destroy free agency and impel the grantor to act against his inclination and free will." *In re Estate of Karmey*, 468 Mich 68, 75; 658 NW2d 796 (2003) (quotation marks and citation omitted).

> The presumption of undue influence is brought to life upon the introduction of evidence which would establish (1) the existence of a confidential or fiduciary relationship between the grantor and a fiduciary, (2) the fiduciary or an interest which he represents benefits from a transaction, and (3) the fiduciary had an opportunity to influence the grantor's decision in that transaction. [*Kar v Hogan*, 399 Mich 529, 537; 251 NW2d 77 (1976).]

"Undue influence is a species of fraud, and the general rules applicable in cases of fraud therefore apply in cases of undue influence as well." *Adams v Adams (On Reconsideration)*, 276 Mich App 704, 710 n 1; 742 NW2d 399 (2007) (internal citations omitted). See also *In re Jennings' Estate*, 335 Mich 241, 247; 55 NW2d 812 (1952) ("[U]ndue influence is a species of fraud and . . . to prevent probate of a will on the grounds of defendant's fraud it must be shown that defendant misrepresented material facts and that testator relied upon and was influenced thereby in disposing of his property . . . .").

> [A] fiduciary relationship arises from the reposing of faith, confidence, and trust and the reliance of one on the judgment and advice of another. Relief is granted

---

[3] Defendants fault plaintiff for not "providing **any** evidence that Hooker was a licensed therapist (or any other type of licensed healthcare provider) that could give rise to a confidential or fiduciary relationship." However, defendants do not cite any authority for the proposition that a professional license is required for a fiduciary relationship. We also note that defendants' position in this regard is seemingly inconsistent with the fact that defendant Hooker charged plaintiff $7,200 for "16 months of sessions."

-7-

when such position of influence has been acquired and abused, or when confidence has been reposed and betrayed. A person in a fiduciary relation to another is under a duty to act for the benefit of the other with regard to matters within the scope of the relation. [*Teadt v Lutheran Church Missouri Synod*, 237 Mich App 567, 580-581; 603 NW2d 816 (1999) (citations omitted).]

We need not decide whether plaintiff and defendant Hooker had a fiduciary relationship giving rise to a presumption of undue influence because, even if they did have such a relationship, we conclude that the trial court properly dismissed the undue-influence claim reflected in plaintiff's complaint for two reasons. First, plaintiff has not alleged or argued that any purported undue influence by defendant Hooker before the transaction at issue that actually overcame her free will. See *In re Estate of Karmey*, 468 Mich at 75. That is, plaintiff has not alleged or argued that she was originally disinclined to purchase and transfer the subject property to defendant UNCORKbuild, but defendant Hooker unduly influenced her otherwise. Nor has plaintiff alleged or argued that defendant Hooker said or did anything else in the course of their relationship to overcome her free will. Second, and relatedly, plaintiff has not alleged or argued that defendant Hooker misrepresented material facts before the subject property was purchased and transferred in June 2022. As explained, the allegations and documentary evidence in this case instead suggest that the parties had a disagreement a few days after closing, or that defendant Hooker unilaterally decided a few days after closing that the subject property would be used as a rental instead of a "House of Prayer." Therefore, because plaintiff did not show that defendant Hooker "misrepresented material facts," see *In re Jennings' Estate*, 335 Mich at 247, the undue-influence claim was properly dismissed for this additional reason as well. We affirm the trial court's dismissal of that count under MCR 2.116(C)(8) and (C)(10).

## C. EQUITABLE ESTOPPEL/PROMISSORY ESTOPPEL

Plaintiff argues that she established a claim for promissory estoppel and that the trial court erred by dismissing that count. Defendants respond that plaintiff's complaint alleged a claim for equitable estoppel, and she cannot add a new claim on appeal. We agree with plaintiff that the fourth count in her complaint actually states a claim for promissory estoppel, notwithstanding that it was mislabeled as equitable estoppel. Further, we also agree with plaintiff that, in light of the record currently before us, dismissal of that claim is not warranted.

"Equitable estoppel arises where a party, by representations, admissions, or silence intentionally or negligently induces another party to believe facts, the other party justifiably relies and acts on that belief, and the other party will be prejudiced if the first party is allowed to deny the existence of those facts." *Van v Zahorik*, 460 Mich 320, 335; 597 NW2d 15 (1999) (quotation marks and citation omitted). "It is well established under Michigan law that equitable estoppel is not a cause of action unto itself; it is available only as a defense." *Casey v Auto Owners Ins Co*, 273 Mich App 388, 399; 729 NW2d 277 (2006).

The elements of promissory estoppel are "(1) a promise, (2) that the promisor reasonably should have expected to induce action of a definite and substantial character on the part of the promisee, (3) which in fact produced reliance or forbearance of that nature, and (4) in circumstances requiring that the promise be enforced if injustice is to be avoided." *Hoye v Westfield Ins Co*, 194 Mich App 696, 705; 487 NW2d 838 (1992) (quotation marks and citation

omitted). This Court has indicated that the elements of equitable estoppel and promissory estoppel are essentially synonymous. See *Marrero v McDonnell Douglas Capital Corp*, 200 Mich App 438, 442; 505 NW2d 275 (1993) (setting forth the four elements of "equitable or promissory estoppel"). "The doctrine of promissory estoppel is cautiously applied. The sine qua non of promissory estoppel is a promise that is definite and clear." *Id.* (internal citation omitted). "In determining whether a requisite promise existed, we are to objectively examine the words and actions surrounding the transaction in question as well as the nature of the relationship between the parties and the circumstances surrounding their actions." *Novak v Nationwide Mut Ins Co*, 235 Mich App 675, 687; 599 NW2d 546 (1999).

Here, although count four of plaintiff's complaint alleged a claim of "equitable estopple [sic]," the substance of the claim, not its label, is controlling. See *Norris v Lincoln Park Police Officers*, 292 Mich App 574, 582; 808 NW2d 578 (2011). The substance of the claim is that plaintiff was promised by defendant Hooker that she could operate the "House of Prayer," that plaintiff justifiably relied on that promise when she purchased the subject property and titled it in the name of defendant UNCORKbuild, and that defendants accordingly should be estopped from retaining "ownership or control of any kind" over the subject property. These allegations are consistent with the four elements of promissory estoppel. See *Hoye*, 194 Mich App at 705. Thus, we conclude that the count at issue alleges a claim of promissory estoppel sufficient to withstand an MCR 2.116(C)(8) motion. See *Cove Creek Condo Assoc v Vistal Land & Home Dev, LLC*, 330 Mich App 679, 713; 950 NW2d 502 (2019) ("Although [*Ollig v Eagles*, 347 Mich 49; 78 NW2d 553 (1956)] involved equitable estoppel rather than promissory estoppel, the substance of the claim controls, not its label.") (internal footnote omitted).

Further, in addition to concluding that count four alleges a claim of promissory estoppel, we also conclude that, in light of the record currently before us, dismissal of that claim under MCR 2.116(C)(10) is not warranted at this time. In her affidavit submitted in response to defendants' motion for summary disposition, plaintiff averred that she "was encouraged by Hooker to purchase the [subject property] for the purpose of conducting Plaintiff's ministry and creating a location for Plaintiff," that plaintiff did so with the understanding that she "was to have possession and control of the Property," and that, a few days after closing, defendant Hooker informed her that the subject property would be used as a rental instead. From these assertions, it is reasonable to infer that defendant Hooker promised plaintiff that she would be able to use the subject property, that plaintiff relied on that promise, that defendant Hooker should have expected such reliance, and that defendant Hooker failed to fulfill that promise shortly after closing. If so, it arguably would be an "injustice" for plaintiff to have no legal or equitable interest in the subject property. See *Hoye*, 194 Mich App at 705.

Simply put, the current record concerning plaintiff's promissory-estoppel claim is sufficient to survive an MCR 2.116(C)(10) motion. Moreover, while defendants argue that the transaction was an irrevocable gift, as explained *infra*, the current record before us is insufficient to sustain that assertion at this time. Accordingly, we reverse the trial court's dismissal of count four of plaintiff's complaint, which states a claim for promissory estoppel, and remand to that court for further proceedings regarding that claim.

D. QUIET TITLE

Plaintiff argues that she established a claim for quiet title and that the trial court erred by dismissing count five of her complaint. Defendants respond that the quiet-title claim fails because plaintiff did not show a superior interest in the subject property, nor did she join necessary parties as required by MCR 2.205. We agree with defendants that the independently-labeled "quiet title" claim misses the mark in the context of the instant case.

"[T]he purpose of an action to quiet title is to determine the existing title to property by removing any cloud therefrom." *Ingle v Musgrave*, 159 Mich App 356, 365; 406 NW2d 492 (1987). "A cloud upon one's title is something which constitutes an apparent incumbrance upon it, or an apparent defect in it; something that shows prima facie some right of a third party, either to the whole or some interest in it." *Emig v Frank P Miller Corp*, 238 Mich 695, 698; 214 NW 144 (1927) (quotation marks and citation omitted). "A successful quiet title action . . . establishes a substantive property right that was not previously shown within the plat." *Beach v Twp of Lima*, 489 Mich 99, 102; 802 NW2d 1 (2011). "An action to quiet title is an equitable action . . . ." *Id*. at 106.

The statute governing quiet-title actions, MCL 600.2932(1), provides as follows:

> Any person, whether he is in possession of the land in question or not, who claims any right in, title to, equitable title to, interest in, or right to possession of land, may bring an action in the circuit courts against any other person who claims or might claim any interest inconsistent with the interest claimed by the plaintiff, whether the defendant is in possession of the land or not.

"In an action to quiet title, the plaintiffs have the burden of proof and must make out a prima facie case of title. If the plaintiffs make out a prima facie case, the defendants then have the burden of proving superior right or title in themselves." *Beulah Hoagland Appleton Qualified Personal Residence Trust v Emmet Co Rd Comm'n*, 236 Mich App 546, 550; 600 NW2d 698 (1999) (internal citation omitted).

We agree with defendants that the independently-labeled "quiet title" count of the complaint misses the mark because plaintiff did not allege a preexisting superior interest in the subject property. See MCR 3.411(B)(2)(c) (providing that, for a quiet-title action, "[t]he complaint must allege . . . the facts establishing the superiority of the plaintiff's claim"). Typical quiet-title actions involve, for example, priority disputes or chain-of-title issues. See, e.g., *White Star Refining Co v Holly Lumber & Supply Co*, 271 Mich 662; 261 NW 72 (1935); *Shockley v Starr*, 119 Ind 172; 21 NE 473 (1889).[4]

In any event, the parties' dispute regarding quiet title is largely beside the point. In the context of this case, "quiet title" is, essentially, the form of equitable relief to which plaintiff may

---

[4] Quiet title, in many cases, is better characterized as an overall "action" as opposed to an independent legal "claim." See *WDIS, LLC v Hi-Country Estates Homeowners Assoc*, 449 P3d 171, 182-183; 2019 UT 45 (2019) (explaining that quiet title often requires showing "some other valid and existing property right").

be entitled if she prevails upon one or more of her equitable claims. See, e.g., *Morris v Estate of Morris*, unpublished per curiam opinion of the Court of Appeals, issued October 21, 2014 (Docket No. 315892), at 3 ("Plaintiff clearly, concisely, and directly identified two separate causes of action—quiet title by virtue of adverse possession and unjust enrichment—in his seven-page complaint.").[5] That is, if plaintiff establishes that she is entitled to legal title of the subject property through an equitable claim, then she would be entitled to a legal judgment to that effect. Accordingly, we affirm the trial court's dismissal of the quiet-title claim while noting that doing so does not affect its power to afford plaintiff equitable relief if warranted after remand. See *Bar-Levav v Bachar*, unpublished per curiam opinion of the Court of Appeals, issued March 2, 2023 (Docket No. 360077) (affirming the trial court's order to transfer the defendant's interest in real property to the plaintiff under an unjust-enrichment theory notwithstanding that the plaintiff dismissed her quiet-title claim at trial).

## E. GIFT

Finally, defendants argue that the trial court should be affirmed in its entirety because the purchase and transfer of the subject property by plaintiff to defendant UNCORKbuild was an irrevocable gift, which would defeat the various equitable claims raised in plaintiff's complaint. Plaintiff responds that there is no evidence that she intended to transfer the subject property to defendant UNCORKbuild as a gift. We agree with plaintiff that there is insufficient evidence of the intent element to warrant dismissal of the entire case at this time.

A valid gift requires the following three elements:

(1) the donor must possess the intent to transfer title gratuitously to the donee, (2) there must be actual or constructive delivery of the subject matter to the donee, unless it is already in the donee's possession, and (3) the donee must accept the gift. [*Davidson v Bugbee*, 227 Mich App 264, 268; 575 NW2d 574 (1997).]

"A gift *inter vivos* is not only immediate, but absolute and irrevocable." *In re Casey Estate*, 306 Mich App 252, 263; 856 NW2d 556 (2014) (quotation marks and citation omitted). "Delivery must be unconditional and must place the property within the dominion and control of the donee." *Id*. at 263-264. "Whether a party has acted with donative intent presents a question of fact. When there is no evidence of donative intent, courts will find that no gift has been made." *In re Rudell Estate*, 286 Mich App 391, 404; 780 NW2d 884 (2009) (internal citation omitted).

In light of the record before us, there is a question of fact as to whether plaintiff intended to surrender "dominion and control" of the subject property to defendants. See *In re Casey Estate*, 306 Mich App at 263-264. See also *Osius v Dingell*, 375 Mich 601, 611; 134 NW2d 657 (1965) ("Such delivery must place the property within the dominion and control of the donee."); 38 Am Jur 2d, Gifts, § 14 (stating that the first element of a gift is "an intention to give and surrender title to and dominion over the property"). Here, plaintiff alleges in her complaint that the parties agreed

---

[5] "Although MCR 7.215(C)(1) provides that unpublished opinions are not binding under the rule of stare decisis, a court may nonetheless consider such opinions for their instructive or persuasive value." *Cox v Hartman*, 322 Mich App 292, 307; 911 NW2d 219 (2017).

beforehand that "the Property would . . . be available to the Plaintiff as a House of Prayer." In other words, plaintiff alleged that before she purchased and facilitated the transfer of the subject property to defendant UNCORKbuild, the parties agreed that she would have partial or total control over the property, or otherwise have an interest in it. Plaintiff reiterated that allegation in her affidavit and the allegation has not been negated or disproven by defendants. Therefore, because there is a question of fact regarding the intent element, defendants are not entitled to summary disposition of the entire case under MCR 2.116(C)(10) on the basis that the subject property was a "gift."

IV. CONCLUSION

We affirm the trial court's dismissal of counts one, two, three, and five of plaintiff's complaint—fraudulent misrepresentation, innocent misrepresentation, undue influence, and quiet title. However, because the fourth count of plaintiff's complaint, titled "equitable estopple [sic]," substantively states a claim for promissory estoppel, and because the record before us indicates that summary disposition of that claim is not presently warranted, we reverse the trial court's dismissal of that count. We remand this case to the trial court for further proceedings. Further, we note that any issue regarding discovery noncompliance or whether the transfer of the subject property was an irrevocable gift may be considered on remand.

Affirmed in part, reversed in part, and remanded to the trial court for further proceedings. We do not retain jurisdiction.[6]

/s/ Michael J. Riordan
/s/ Randy J. Wallace
/s/ Christopher M. Trebilcock

---

[6] Defendants assert that defendant Hooker should be dismissed from these proceedings because plaintiff did not plead sufficient facts to pierce the corporate veil. However, "piercing the veil of a corporate entity is an equitable remedy sparingly invoked to cure certain injustices that would otherwise go unredressed in situations where the corporate entity has been used to avoid legal obligations. It is therefore a remedy, and not a separate cause of action . . . ." *Gallagher v Persha*, 315 Mich App 647, 654; 891 NW2d 505 (2016) (cleaned up). Thus, we need not decide at this time whether defendant Hooker can be personally liable, as resolution of that issue will depend upon the nature of relief, if any, to which plaintiff eventually may be entitled.